UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **HALLIBURTON COMPANY,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. _____ |
| § | |
| **UNITED STATES OF AMERICA,** § | |
| § | |
| **Defendant.** § | |

## COMPLAINT

Plaintiff, Halliburton Company ("*Halliburton*" or "*Plaintiff*"), on behalf of itself and its consolidated subsidiaries, files this Complaint for the recovery of federal income taxes improperly assessed and collected by Defendant, United States of America, plus interest thereon as provided by law. Plaintiff alleges and states the following:

### I.    NATURE OF THE ACTION

1. This action arises under the Internal Revenue Code of 1986, as amended and codified in Title 26 of the United States Code (the "*Code*"), for the recovery of federal income taxes erroneously or illegally assessed and collected by Defendant in the amount of $11,375,000 with respect to Halliburton's tax year ended December 31, 2010 (the "*2010 Tax Year*"), plus interest thereon as provided by law.

### II.    THE PARTIES

2. Halliburton is an energy services company. Halliburton is incorporated under the laws of the State of Delaware, with its principal place of business at 3000 N. Sam Houston Parkway

E., Houston, Texas 77032-3219.  Its shares are publicly traded on the New York Stock Exchange under the symbol HAL.

3. Halliburton is the parent of an affiliated group of corporations within the meaning of Section 1504 of the Code for the 2010 Tax Year.  Halliburton and its affiliated group joined in filing a consolidated federal income tax return for the 2010 Tax Year, as well as an amended federal income tax return for the 2010 Tax Year.  As the common parent of its affiliated group, Halliburton is the appropriate party to file this Complaint.

4. Defendant is the United States of America.  The acts described herein were performed by agents of the Internal Revenue Service (the "*IRS*"), a bureau of the U.S. Department of the Treasury.  Service of process may be made on Defendant by registered mail, return receipt requested to the following:

    a. Merrick B. Garland
Attorney General for the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

    b. Alamdar Hamdani
United States Attorney
Southern District of Texas
c/o Civil Process Clerk
1000 Louisiana St., Suite 2300
Houston, TX 77002

    c. Department of the Treasury
Internal Revenue Service
c/o Marjorie Rollinson
Chief Counsel
1111 Constitution Ave., N.W.
Washington, D.C. 20224

### III.     JURISDICTION AND VENUE

5. This is an action for the recovery of federal income taxes erroneously or illegally assessed and collected from Halliburton for the 2010 Tax Year. This Court has jurisdiction over this action pursuant to 26 U.S.C. § 6532(a)(1), 26 U.S.C. § 7422(a), and 28 U.S.C. § 1346(a)(1).

6. Halliburton timely filed its federal income tax return for the 2010 Tax Year.

7. Halliburton made full and timely payment of its federal income tax liability for the 2010 Tax Year as required by 28 U.S.C. § 1346(a)(1).

8. On December 21, 2018, Halliburton timely filed Form 1120X, Amended U.S. Corporation Income Tax Return, for its 2010 Tax Year by certified mail with the IRS Service Center in Ogden, Utah, claiming a refund of federal income tax paid in the amount of $11,375,000 plus statutory interest (the "**Refund Claim**").

9. Halliburton timely filed the Refund Claim as required by 26 U.S.C. § 7422(a).

10. Halliburton's Refund Claim has not been allowed or paid by the IRS.

11. By letter dated December 13, 2022, the IRS disallowed Halliburton's Refund Claim.

12. Halliburton timely files this Complaint for refund of federal income taxes within the period prescribed by 26 U.S.C. § 6532(a)(1).

13. For the reasons set forth in paragraphs 7, 9, and 12, jurisdiction is proper.

14. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1402(a)(2) because Halliburton's principal place of business is in Houston, Texas, within this judicial district. Intra-district venue is proper in the Houston Division pursuant to 28 U.S.C. § 124(b)(2).

## IV.    FACTUAL BACKGROUND

*The Settlement Payment*

15. Halliburton is one of the world's largest providers of products and services to the oil and gas industry. It supports oil and gas projects around the globe, including in North America, Latin America, Europe, Africa, the Middle East and Asia. The nature of Halliburton's business exposes it to risk of unsettled political conditions in the countries where it conducts business, including expropriation or similar governmental actions. Despite these risks, the success of Halliburton's business depends on cooperative relationships with the governments of the countries in which it operates.

16. In the Fall of 2010, Halliburton was contacted by a representative acting on behalf of the government ("**Foreign Government**") of a foreign country ("**Foreign Country**") in which Halliburton had employees and significant operations. The representative demanded payment from Halliburton and claimed that Foreign Government would bring a billion dollar civil suit in the U.S. against Halliburton for alleged bribery. That claim was baseless. The U.S. Department of State described Foreign Country as facing "formidable challenges of terrorist attacks, inter-communal conflicts, crime and kidnapping, and public mistrust of the government." The U.S. Department of State also has noted that Foreign Government "has yet to develop effective systems to address corruption, poverty, and ineffective social service delivery."

17. On or about November 8, 2010, representatives of Halliburton met with representatives of Foreign Government. At that meeting, the representatives of Foreign Government again demanded payment. Halliburton declined to make a payment in response to that demand.

18.     On November 25, 2010, Thanksgiving Day in the United States, Foreign Government raided Halliburton's offices in Foreign Country and arrested or detained eight employees. Upon learning of these events, Halliburton began to take immediate steps to protect the safety and well-being of its employees in Foreign Country and to deal with the interruption of its business operations.

19.     On or about November 29, 2010, Halliburton wrote a letter to Foreign Government, which provided, in pertinent part: "Halliburton has been involved with the development of oil & gas resources in [Foreign Country] for many years, having provided oilfield services to numerous customers there since the 1950's. Our commitment there is evidenced by our employment of over 750 people in the country, our efforts to train and promote [local] citizens for leadership positions, and our relationships with other businesses in the [local] economy. We hope to be able to continue this activity for many years into the future."

20.     On or about December 1, 2010, Foreign Government wrote a letter to Halliburton, which reiterated the demand for payment and threatened to "activate alternative steps" if its demand was not met within 30 days. Such steps included actions designed to impede the ability of Halliburton's executives to travel and conduct business not only in Foreign Country but in other jurisdictions where Halliburton conducted important operations.

21.     On or about December 7, 2010, Foreign Government reported that it had brought charges against Halliburton, its affiliates and several executives. Of the sixteen counts in the charges, only one carried a statutory fine or penalty; that charge carried a statutorily prescribed potential fine of approximately $130 at prevailing exchange rates. These charges were baseless.

22.     On or about December 11, 2010, Halliburton and Foreign Government entered into a settlement agreement (the "*Settlement Agreement*"), pursuant to which Halliburton paid

$35,000,000 to Foreign Government, including legal fees paid on behalf of Foreign Government, in 2010 (the "***Settlement Payment***").  Halliburton paid the Settlement Payment to protect its employees and reputation, prevent disruption of its business, and ensure that its executives could freely travel.  Halliburton did not pay any portion of the Settlement Payment for a fine or similar penalty.

23.　The language of the Settlement Agreement confirms that no portion of the Settlement Payment was for a fine or similar penalty.  Under the express terms of the Settlement Agreement, the parties recognized that Halliburton has "extensive business interests" in Foreign Country and that Halliburton "intend[ed] to continue its regular business activities, including but not limited to submitting bids for other future projects."  Foreign Government agreed "not [to] take any steps to suggest or enforce any exclusion, restriction, limitation, disadvantage or debarment which prevents [Halliburton] from actively executing [its] existing projects, pursuing [its] business and bidding for other or further projects or work within" Foreign Country.  The Settlement Agreement further provides that "The Parties have agreed to enter into this Agreement solely to put to rest all controversy and to avoid the burden, inconvenience and expense of further protracted and costly litigation."  The Settlement Agreement makes clear that it "contains the entire understanding and agreement between [Foreign Country] and Halliburton …."

24.　By contrast, the terms "fine" or "penalty" do not appear in the Settlement Agreement and the Settlement Payment is not attributed to any "fine" or "penalty."

*Halliburton's Federal Income Tax Reporting of the Settlement Payment*

25.　For the 2010 Tax Year, Halliburton properly claimed a $35,000,000 deduction from its gross income for federal income tax purposes for the Settlement Payment as an ordinary and necessary expense of carrying on Halliburton's business.

6

26. The Code in effect for the 2010 Tax Year provided a broad command: "There *shall be allowed* as a deduction *all* the ordinary and necessary expenses paid or incurred … in carrying on any trade or business." 26 U.S.C. § 162(a) (emphases added).

27. Amounts paid to protect employees and ongoing business operations, such as the Settlement Payment, are deductible as ordinary and necessary expenses under Code Section 162(a).

28. Code Section 162(f) as in effect for the 2010 Tax Year provided that no deduction is allowed for "any fine or similar penalty paid to a government for the violation of any law." Where a statute's "general statement of policy is qualified by an exception," courts usually "read the exception narrowly in order to preserve the primary operation of the provision." *Knight v. Comm'r*, 552 U.S. 181, 190 (2008).

29. The legislative history of Section 162(f) is clear that the limitation on Section 162(a) deductibility for a "fine or similar penalty" would apply only in the narrow (and easily determined) situation in which the taxpayer has been convicted in a formal criminal proceeding. S. Rep. No. 91-552, at 274 (1969). This was a codification of case law existing at the time Congress enacted Section 162(f). *Id.*

30. The Treasury Department promulgated regulations under Section 162, including a regulation that substantially expanded the narrow exception under Section 162(f). As in effect for the 2010 Tax Year, Treasury Regulation (26 C.F.R.) § 1.162-21(b)(1)(iii) (the "***Potential Penalty Regulation***") defined "fine or similar penalty" as including an amount "[p]aid in settlement of the taxpayer's actual *or potential* liability for a fine or penalty (civil or criminal)." (Emphasis added.)

31. The Treasury Department first proposed the Potential Penalty Regulation in the Federal Register for December 6, 1972 (37 F.R. 25936) and later promulgated that regulation on

7

February 20, 1975 (40 F.R. 7437).  The only consideration of public comments submitted in response to the proposed Potential Penalty Regulation is reflected in a Technical Memorandum issued contemporaneous with the 1975 rule.  That Technical Memorandum states, in pertinent part, the following:

> [C]omments, including those offered by the Interna[tiona]l Association of Ice Cream Manufacturers – Milk Industry Foundation, to the effect that a deduction for a payment should not be disallowed unless the illegality of the payment is proven in a separate proceeding, or unless a penalty or sanction is actually imposed upon the taxpayer as a result of making the payment, were rejected in light of the amendment made by the Revenue Act of 1971 to section 162(c) and the accompanying Senate Finance Committee report.

Internal Revenue Service, Technical Memo. (Jan. 30, 1975), 1975 WL 40069.  The referenced amendment made by the Revenue Act of 1971 describes an amendment to a different provision of Section 162, however, not the "fine or similar penalty" language of Section 162(f).

32. The IRS erroneously disallowed $32,500,000 of the $35,000,000 total deduction for the Settlement Payment claimed by Halliburton by relying on the Potential Penalty Regulation.

33. Because of the erroneous determination described in paragraph 32, the IRS erroneously and illegally refused to refund the amount requested in the Refund Claim.

### V.   CLAIMS FOR RELIEF

#### Count One
#### (Overpayment of Federal Income Tax, 26 U.S.C. § 7422)

34. Halliburton repeats and incorporates by reference the allegations contained in the preceding paragraphs, as if fully set forth herein.

35. The IRS erroneously and illegally denied Halliburton's Refund Claim for the overpayment of tax and interest for the 2010 Tax Year relating to the Settlement Payment.  The grounds upon which the IRS denied the claim are erroneous, unsupported by the facts, and contrary to applicable law.

36. Therefore, Halliburton overpaid its federal income taxes for the 2010 Tax Year and is entitled to a refund of assessed and paid taxes in the amount of $11,375,000, together with statutory interest as provided by law.

## Count Two
### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706)

37. Halliburton repeats and incorporates by reference the allegations contained in the preceding paragraphs, as if fully set forth herein.

38. The Administrative Procedure Act ("*APA*") requires an agency to publish "either the terms or substance of the proposed rule or a description of the subjects and issues involved" in its proposed rulemaking and "give interested persons an opportunity to participate in the rule making." 5 U.S.C. § 553(b)(3), (c). The APA further requires an agency to "incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.* § 553(c).

39. The APA requires this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] without observance of procedure required by law." *Id.* § 706(2)(A), (D).

40. The Potential Penalty Regulation was promulgated "without observance of procedure required by law" because, among other things, the Treasury Department failed to respond meaningfully to comments received. The Potential Penalty Regulation is also arbitrary, capricious, and an abuse of discretion because, among other things, the Treasury Department failed to provide a reasoned statement of the Regulation's basis and purpose and otherwise failed to provide a reasoned explanation for the choices made in the Regulation.

41. Accordingly, the Potential Penalty Regulation violates 5 U.S.C. § 553, and it was arbitrary and unlawful for the IRS to rely on the Potential Penalty Regulation in denying

Halliburton's Refund Claim; the Proposed Penalty Regulation should also be declared unlawful and set aside under the APA. *Id.* § 706(2).

## Count Three
### (Treasury Regulation (26 C.F.R.) § 1.162-21(b)(1)(iii) Is Invalid, *Mayo Found. for Med. Educ. & Research v. U.S.*, 562 U.S. 44 (2011))

42. Halliburton repeats and incorporates by reference the allegations contained in the preceding paragraphs, as if fully set forth herein.

43. A regulation that is inconsistent with, or an unreasonable interpretation of, the statute under which it was enacted is invalid. The framework determined by the U.S. Supreme Court requires a Court to determine (1) whether Congress has "directly addressed the precise question at issue," and (2) if not, whether the agency rule is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found. for Med. Educ. & Research v. U.S.*, 562 U.S. 44, 52-53 (2011); *accord Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

44. Treasury Regulation (26 C.F.R.) § 1.162-21(b)(1)(iii) is inconsistent with 26 U.S.C. § 162 and cannot be defended under the framework articulated in *Mayo* or *Chevron* and the Treasury Department's interpretation should not be accorded deference. *Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023) (granting certiorari to address whether *Chevron* should be overruled or clarified).

45. Accordingly, it was arbitrary and unlawful for the IRS to rely on the Potential Penalty Regulation in denying Halliburton's Refund Claim; in addition, the Potential Penalty Regulation is invalid and, therefore, should be declared unlawful and set aside.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

(A) in favor of Halliburton and against the United States of America, in the total amount of $11,375,000, or such greater amount as this Court may determine to be legally refundable, together with statutory interest thereon as provided by law, and

(B) awarding Halliburton its costs, including attorney's fees, and such other and further relief as this Court deems just and proper.

DATED: June 6, 2024

Respectfully submitted,

*/s/*    George M. Gerachis
George M. Gerachis
Attorney-in-Charge
Texas State Bar No.: 07812500
S.D. TX Federal I.D. No.: 345390
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email: ggerachis@velaw.com
Telephone: 713-758-1056
Facsimile: 713-615-5612

OF COUNSEL:

Kathleen Pakenham *(PHV Forthcoming)*
VINSON & ELKINS L.L.P.
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Email: kpakenham@velaw.com
Telephone: 212-237-0149
Facsimile: 917-591-1995

Christopher Popov
Texas State Bar No.: 24032960
S.D. TX Federal I.D. No.: 34615
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email: cpopov@velaw.com
Telephone: 713-758-2636
Facsimile: 713-615-5033