# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HALLIBURTON COMPANY,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-02149** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |


**OPPOSITION TO UNITED STATES' AMENDED MOTION TO DISMISS
COUNTS TWO AND THREE OF PLAINTIFF'S COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING ............................................ 3

ISSUES TO BE RULED UPON .......................................................................... 3

BACKGROUND ................................................................................................... 4

ARGUMENT......................................................................................................... 6

    I.    The Substantial Variance Doctrine Does Not Apply Because the Complaint Relies on the Same Ground for Refund as the Refund Claim. .................................................................................................. 8

        A.    Halliburton's Refund Claim Set Forth in Detail the Ground Upon Which Its Deduction Was Claimed. ........................................ 8

        B.    The Substantial Variance Doctrine Did Not Require Halliburton To Preemptively Rebut All Conceivable Government Counterarguments in Its Refund Claim. ...................... 9

        C.    Even If Counts Two and Three Provide Separate Grounds for Refund, the Complaint Does Not Substantially Vary from the Refund Claim. ................................................................................. 15

    II.    Application of the Substantial Variance Doctrine Here Would Not Advance the Purposes of the Rule Because the IRS Could Not Have Considered the Invalidity of the Regulation in Addressing the Refund Claim. ........................................................................................ 15

CONCLUSION ................................................................................................... 19

## INTRODUCTION

This case is about whether Plaintiff Halliburton Company ("***Halliburton***") was entitled to a federal tax deduction for a $35 million payment to a foreign government as a business expense, as permitted by section 162(a)[1] of the Internal Revenue Code (26 U.S.C.) ("***Code***") and is therefore entitled to a refund of overpaid tax of $11,375,000, plus interest. It is a jurisdictional prerequisite to a tax refund suit like this one that the taxpayer first make an administrative claim for refund with the Internal Revenue Service ("***IRS***").  26 U.S.C. § 7422(a).  Halliburton timely filed the required claim in December 2018.

As relevant here, an administrative refund claim must state (1) the ***grounds*** for the refund (*i.e.*, the legal basis for the tax benefit claimed by the taxpayer) and (2) the ***facts*** on which the refund claim relies.  26 C.F.R. § 301.6402-2(b)(1).  A taxpayer cannot base a suit for refund on grounds or facts which substantially vary from those set forth in its administrative claim for refund.  The reason for this rule—often referred to as the "substantial variance doctrine"—is based on common sense:  It prevents "a taxpayer from litigating a refund claim when its administrative claim was so vague or so general that the IRS could only guess at the precise nature of the taxpayer's claim."  *IA 80 Grp., Inc. v. United States*, 347 F.3d 1067, 1075 (8th Cir. 2003).

In its Amended Motion to Dismiss [ECF No. 29] ("***Motion***"), the United States erroneously asserts that the ground for refund in the Complaint substantially varies from

---

[1] All section references are to the Code unless otherwise indicated.  Section 162(a) allows a federal income tax deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business …."

the ground for refund in Halliburton's administrative refund claim.[2]  The government is wrong.  Halliburton's ground for refund in its administrative refund claim is *exactly* the same as the ground on which it has brought suit.  That is, Halliburton overpaid its taxes for tax year 2010 and is entitled to a refund because it should have been allowed to deduct the $35 million payment as a business expense, as permitted by section 162(a).  The Motion confuses that ground for refund (*i.e.*, the amount is deductible as a business expense) with a counterargument raised by the IRS about why the deduction should be denied (*i.e.,* allegedly it was a fine or similar penalty).  The substantial variance doctrine places no restrictions on a taxpayer's ability to defend against the government's counterarguments to its claim for refund.  Indeed, the government's theory would require taxpayers to prophesy watershed changes in the legal landscape like *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).  Taxpayers, of course, are not required to peer into crystal balls in filing their refund claims.

Finally, and perhaps most important, Halliburton's argument challenging the validity of the regulation relied on by the IRS to deny Halliburton's refund claim (26 C.F.R. § 1.162-21(b)(1)(iii)) is an argument the IRS could not have even considered in evaluating Halliburton's refund claim under long-standing IRS policy.  The purpose of the variance rule—to limit needless litigation—would not be served by stripping this Court of jurisdiction to address the validity of that regulation.  The Motion should be denied.

---

[2] The government does not suggest that the facts in the refund claim vary from the facts on which this suit rests.

## NATURE AND STAGE OF THE PROCEEDING

This is an action brought on June 6, 2024, by Halliburton against the United States seeking a refund of overpaid federal income tax.  The United States filed its answer on September 23, 2024 [ECF No. 20].  The Court entered a Docket Control Order [ECF No. 27] on November 19, 2024.  The parties have made disclosures pursuant to Rule 26.[3]  On November 21, 2024, the United States filed its motion to dismiss [ECF No. 28] and amended its motion later that day because it had failed to redact an Employer Identification Number [ECF No. 29].

## ISSUES TO BE RULED UPON

The government has moved the Court to dismiss Counts Two and Three of the Complaint, claiming that under the "substantial variance doctrine," the Court cannot consider the validity of a regulation relied on by the government in support of its affirmative defense.  The Motion alleges lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).  With respect to Rule 12(b)(1), Halliburton, as plaintiff, "has the burden of proving by a preponderance of the evidence that [this Court] does have subject matter jurisdiction." *Kling v. Hebert,* 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  With respect to Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff" and resolve "all questions of fact and any ambiguities in the controlling substantive law . . . in the plaintiff's favor."

---

[3] Unless otherwise indicated, all Rule references are to the Federal Rules of Civil Procedure.

*Covington v. City of Madisonville*, 812 F. App'x 219, 223-24 (5th Cir. 2020) (internal citations and quotation marks omitted).  Under those parameters, the government's motion must be denied unless the Complaint fails to "state a claim to relief that is plausible on its face."  *Id.* at 223 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## BACKGROUND

In December 2018, Halliburton timely filed Form 1120X, Amended U.S. Corporation Income Tax Return (the "***Refund Claim***") for its tax year ended December 31, 2010 ("***2010 Tax Year***").  *See* Mot. Ex. 1, at -002, ECF No. 30.  The Refund Claim described in detail the circumstances surrounding Halliburton's payment of the $35 million settlement payment to a foreign government.  *See generally id.* at -004, -034-35.  Among other things, the Refund Claim explained that:

- The foreign government engaged in an "aggressive campaign" to exact a substantial payment from Halliburton in November and December 2010, involving the raid of Halliburton's local offices, the arrest or detention of its employees, and threats of further escalation;

- The foreign government brought frivolous charges against Halliburton and certain of its executives;

- Although Halliburton "had no potential for any criminal liability or any fine or penalty under [local] law," Halliburton sought to end the foreign government's escalating campaign out of concern for employee well-being and continued interference with its business operations and obligations; and

- Pursuant to a settlement agreement with the foreign government, Halliburton made a $35 million payment (the "***Settlement Payment***") "purely for business reasons, including (as expressly set forth in the [s]ettlement [a]greement) to stop the [foreign government's] harassment of its employees and the disruption of its business," and "not in lieu of any actual or potential fine or penalty."

*Id.* at -034-035.

4

The Refund Claim further described how Halliburton deducted a portion of the Settlement Payment on its originally filed tax return for the 2010 Tax Year, and informally claimed an increased deduction for the entire $35 million during the IRS's examination of Halliburton's 2010 Tax Year. *Id.* at -004. The Refund Claim explained that the IRS disallowed Halliburton's deduction of $32,500,000[4] of the Settlement Payment based on its view that such amount was not a deductible business expense under section 162(a), but rather was payment of a nondeductible fine or penalty under section 162(f). *Id.* at -004, 035. The Refund Claim concluded by asserting that Halliburton was entitled to a refund of $11,375,000, plus interest, because the Settlement Payment was deductible as a business expense under section 162(a). *Id.* at -035.

On June 6, 2024, Halliburton filed the Complaint in this case. Compl., ECF No. 1. As in the Refund Claim, the Complaint seeks a refund of $11,375,000, plus interest, on the ground that the $35 million payment is deductible as a business expense under section 162(a). Crucially, neither the Refund Claim nor the Complaint asserts any ground for refund except that the Settlement Payment is deductible as a business expense under section 162(a). In other words, the only legal ground for reducing Halliburton's tax and producing a refund is that the Settlement Payment is a deductible business expense.

In disallowing the business expense deduction, the IRS argued that the Settlement Payment was a "fine or penalty," within the meaning of section 162(f), which would not be deductible. Halliburton strongly disputes that counterargument and took issue with it

---

[4] The IRS allowed a deduction of $2,500,000 of the $35,000,000, which was paid to reimburse the foreign government's legal fees.

5

in both the Refund Claim and the Complaint. The Complaint preemptively addresses the government's counterargument to Halliburton's ground for refund by explaining that the Settlement Payment was not a fine or penalty. In addition to disputing the government's characterization of the facts, Halliburton pointed to the legislative history of section 162(f), which makes clear that only post-conviction fines or penalties are not deductible, and explained that the IRS substantially (and impermissibly) expanded that narrow rule through Treasury Regulation (26 C.F.R.) section 1.162-21(b)(1)(iii) (the "***Potential Penalty Regulation***"), on which the IRS relied in denying Halliburton's Refund Claim. *See id.* ¶¶ 22-24, 28-32.

Count One of the Complaint alleged that, because the grounds on which the IRS denied Halliburton's Refund Claim are erroneous, unsupported by the facts, and contrary to applicable law, Halliburton was entitled to a refund related to the Settlement Payment. *Id.* ¶¶ 34-36. Counts Two and Three of the Complaint alleged that, in denying Halliburton's Refund Claim, it was arbitrary and unlawful for the IRS to rely on the Potential Penalty Regulation, which is invalid because it was promulgated in violation of the Administrative Procedure Act ("***APA***") and is inconsistent with section 162. *Id.* at ¶¶ 37-45. Counts Two and Three do not allege a ground for refund (*i.e.*, allege a ground on which Halliburton's taxes should be reduced); rather, they simply explain why the government's counterarguments are wrong.

## **ARGUMENT**

The substantial variance doctrine does not bar any of Halliburton's arguments here because Halliburton has never changed the ground on which it is entitled to a refund.

6

Halliburton consistently has relied on one ground for refund:  The Settlement Payment is deductible as a business expense under section 162(a).  In both its Refund Claim and Complaint, Halliburton explained in detail why the Settlement Payment is deductible as a business expense.  Although it was not required to, Halliburton also proactively rebutted the IRS's counterargument that the Settlement Payment was a nondeductible fine or penalty.  The Complaint elaborated on its rebuttal by arguing that the Potential Penalty Regulation on which the IRS relied is invalid.   Rebuttals of the government's counterarguments, whether raised in a refund claim or not, are not governed by the substantial variance doctrine.  Because the ground for refund stated in the Refund Claim and the Complaint do not vary, indeed are identical, the Motion should be denied.

Furthermore, even if Halliburton's rebuttal arguments are considered grounds for refund, which they are not, the substantial variance doctrine still should not apply.  The purpose of the substantial variance doctrine is to prevent unnecessary lawsuits by requiring taxpayers to make administrative refund claims that are specific enough that the IRS can consider and act on those claims.  *E.g.*, *First Nat'l Bank v. United States*, 727 F.2d 741, 744 (8th Cir. 1984) (reasons for substantial variance doctrine are to prevent surprise, to give the IRS adequate notice of claim and facts on which claim is based, to permit administrative investigation, and to provide the IRS with opportunity to correct errors).  That policy is not served here for at least two reasons.  First, under long-standing IRS policy, the IRS was forbidden from considering Halliburton's regulatory invalidity argument when it evaluated the Refund Claim.  Second, Halliburton's argument that the Potential Penalty Regulation is not a valid regulation under the APA must be analyzed

7

under the framework adopted earlier this year by the U.S. Supreme Court in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), years after the Refund Claim was filed.

The government attempts to force this Court to rely on an invalid regulation by distorting the substantial variance doctrine, a narrow rule designed to limit needless refund litigation. As discussed below, the government's reliance on that doctrine is misplaced and the Motion should be denied.

## I.    The Substantial Variance Doctrine Does Not Apply Because the Complaint Relies on the Same Ground for Refund as the Refund Claim.

The United States has consented to be sued for refunds of "erroneously or illegally assessed or collected" taxes. 28 U.S.C. § 1346(a)(1). Before bringing a lawsuit against the United States to recover such taxes (a refund suit), a taxpayer must file an administrative refund claim with the IRS. 26 U.S.C. § 7422(a). The taxpayer's refund claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). Here, Halliburton did just that. Contrary to what the government effectively asserts, the law does not require that Halliburton anticipate and rebut each and every potential government counterargument in its Refund Claim to invoke this Court's jurisdiction.

### A.    Halliburton's Refund Claim Set Forth in Detail the Ground Upon Which Its Deduction Was Claimed.

Halliburton consistently has relied on one ground for refund: The Settlement Payment is deductible as a business expense under section 162(a). A "ground" for refund explains why the taxpayer has overpaid its taxes. For example, a ground might be that the

8

taxpayer is exempt from taxation under the Code, *see, e.g.*, *Santa Cruz Bldg. Ass'n v. United States*, 411 F. Supp. 871, 876-77 (E.D. Mo. 1976), or that the taxpayer was entitled to a particular deduction under the Code, *see, e.g.*, *IA 80 Grp., Inc.*, 347 F.3d at 1075; *Dahlgren v. United States*, 553 F.2d 434, 442 (5th Cir. 1977).  Under the regulations, the taxpayer must include such ground for refund in its refund claim.  26 C.F.R. § 301.6402-2(b)(1).

Here, Halliburton has relied on one consistent explanation as to why it overpaid its taxes—that is, one ground for refund—which is that the Settlement Payment is deductible as a business expense.  The Refund Claim thoroughly explained why the Settlement Payment is so-deductible.  Mot. Ex. 1, at -034-35, ECF No. 30.  The Refund Claim provided a detailed account of the raid and arrests by the foreign government, the baseless charges against Halliburton and its executives, and Halliburton's payment of the Settlement Payment to protect its employees and reputation and to prevent disruption of its business.  *Id.*  The Complaint reiterated that ground for refund and further detailed the circumstances surrounding the Settlement Payment.  Compl. ¶¶ 15-27.

> **B.    The Substantial Variance Doctrine Did Not Require Halliburton To Preemptively Rebut All Conceivable Government Counterarguments in Its Refund Claim.**

Despite the fact that the Refund Claim detailed the sole ground on which Halliburton asserts it is entitled to a refund, the government attempts to strip this Court of jurisdiction by relying on the substantial variance doctrine.  Contrary to the government's misguided view of that doctrine, Halliburton's invalidity arguments are not new grounds for refund. The government is mistaken.

Courts across the country, including in the Fifth Circuit, have uniformly held that the variance doctrine "does not mean that the claim for refund must have contained all the evidence or argument that is offered in the suit." *Snead v. Elmore*, 59 F.2d 312, 314 (5th Cir. 1932); *see also Hanna Iron Ore Co. v. United States,* 68 F. Supp. 832, 896 (E.D. Mich. 1946) ("It is not necessary that a claimant submit all of his legal arguments in a claim for refund . . . ."); *New Gaming Sys., Inc. v. United States*, No. 2:11–CV–00627–MCE–AC, 2013 WL 5798998, at *10 (E.D. Cal. Oct. 28, 2013) (same). Rather, a refund claim must contain only the "substantial grounds on which illegality is asserted and the general facts supporting the grounds." *Elmore*, 59 F.2d at 314. As explained above, Halliburton easily meets this standard.

Not only is a taxpayer not required to offer all arguments and facts in support of its ground for refund, the courts also have made clear that a taxpayer need not preemptively rebut counterarguments that the government might raise. *See Parma v. United States*, 45 Fed. Cl. 124, 130 (1999) ("Taxpayers are not required to inflate the parameters of their refund claims in anticipation of all possible defenses on the part of the Government."). This is true even where the government's counterarguments are foreseeable. *Keefer v. United States*, No. 3:20-CV-0836-B, 2022 WL 2473369, at *7 (N.D. Tex. July 6, 2022) (explaining that "a taxpayer is not required to 'balloon their refund claims in attempts to anticipate every conceivable Government defense'") (quoting *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970)).

Although it was not required to, Halliburton did preemptively rebut the government's counterargument that the Settlement Payment was for a nondeductible fine

or penalty in its Refund Claim.  The Complaint further rebuts the government's counterargument that the payment was for a nondeductible fine or penalty by pointing to the legislative history of section 162(f) and the invalidity of the Potential Penalty Regulation.  But Halliburton's rebuttal arguments are just that—rebuttal arguments.  These arguments do not allege any new or separate deductions, and Halliburton still must show that the Settlement Payment is a deductible business expense under section 162(a) to obtain a refund.  That is, Halliburton's rebuttal arguments are not separate grounds on which Halliburton's Refund Claim is based within the meaning of 26 C.F.R. section 301.6402-2(b)(1), and the substantial variance doctrine does not apply.

Rather, the substantial variance doctrine is relevant only where a refund suit raises grounds for refund that "could have constituted a separate basis for recovery had they been timely filed."  *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1369, 1371-72 (Fed. Cir. 2000) (explaining and affirming trial court's reasoning).  Courts consistently have recognized that the substantial variance doctrine does not bar arguments that do not raise independent grounds for refund.

For example, in *Dahlgren*, the parties disputed how much stock the taxpayer owned for purposes of applying then-existing section 1239(a)(1), which governs gain realized on sale or exchange of property between related persons.  553 F.2d at 436.  The taxpayer maintained that he did not own more than 80 percent in value of the stock and therefore his gain was taxable at the lower capital gains rate (rather than as ordinary income) under section 1239(a)(1).  *Id.* at 442.  The government's primary theory was that the taxpayer owned more than 80 percent in value because he held a controlling block.  *See id.* at 436-

11

37, 442.  In his refund claim, the taxpayer simply denied the government's assertion.  *Id.* at 442.  At trial in the refund suit, the taxpayer introduced evidence that there was another owner of the stock.  *Id.* at 436-37.  The government argued that such evidence, which was not disclosed in the taxpayer's refund claim, was improperly admitted at trial.  *Id.* at 437, 441-42.  In *Dahlgren,* the Fifth Circuit disagreed with the government, concluding that the taxpayer's argument that there was another owner was but one argument in support of the ground for refund under section 1239(a)(1) asserted in the refund claim.  *Id.* at 442.

Similarly, in *Iowa 80 Group, Inc.*, the parties disputed whether the taxpayer's facilities were "retail motor fuels outlets" for purposes of determining the rate of depreciation under section 168(e)(3)(E).  347 F.3d at 1069-71.  A taxpayer could establish that a facility qualified as a retail motor fuels outlet, and was therefore depreciable over 15 years, by relying on either a "gross-revenue" test or a "floor-space" test.  *Id.* at 1070.  In its refund claim and a supporting memorandum, the taxpayer argued that its facilities qualified based on the gross-revenue test and made no mention of the floor-space test.  *Id.* at 1070, 1075.  In a refund suit, the taxpayer maintained that its facilities were retail motor fuels outlets under *both* tests.  *Id.* at 1071.  The government sought to preclude the taxpayer from arguing that its facilities qualified under the floor-space test.  *Id.* at 1071, 1073.

The court rejected the government's argument.  *Id.* at 1075-76.  It concluded there was no variance between the taxpayer's floor-space argument and the ground under section 168(e)(3)(E) set forth in the taxpayer's refund claim.  *Id.*  As in *Dahlgren*, the floor-space test was just one argument in support of the ultimate ground for refund under section 168(e)(3)(E) that the property was depreciable over a 15-year period.  Other cases reach

12

similar results. *See, e.g.*, *Edde v. United States*, 217 Ct. Cl. 690, 691-93 (1978); *Santa Cruz Bldg. Ass'n*, 411 F. Supp. at 876-77; *Walker v. United States*, 143 F. Supp. 566, 567 (N.D. Tex. 1956).

Halliburton's rebuttal arguments regarding the invalidity of the Potential Penalty Regulation are not grounds for refund. Here, as in *Dahlgren* and *Iowa 80 Group, Inc.*, Halliburton's ground for refund is based on one specific provision of the Code: That it overpaid its taxes because the Settlement Payment is deductible as a business expense under section 162(a). As explained above, Halliburton consistently has maintained this as its sole ground for refund.

Just as in *Dahlgren* and *Iowa 80 Group, Inc.*, if this Court were to disagree with Halliburton that the Settlement Payment is deductible as a business expense, Halliburton's rebuttal arguments regarding invalidity would offer no alternative basis for refund. Halliburton's case is even stronger than *Dahlgren* and *Iowa 80 Group, Inc.*, because Halliburton's invalidity arguments are merely rebuttals to the government's affirmative defense that the Settlement Payment is a nondeductible fine or penalty. Therefore, such arguments are not separate grounds for refund, and the variance doctrine does not apply.

By comparison, the cases cited by the government involve refund suits that interjected entirely separate, alternative bases on which taxpayers could obtain refunds. *See, e.g.*, *Wood v. United States*, 863 F.2d 417, 418, 422-23 (5th Cir. 1989); *Mallette Bros. Constr. Co., Inc. v. United States*, 695 F.2d 145, 153-56 (5th Cir. 1983); *N. Ill. Gas Co. v. United States*, 12 Cl. Ct. 84, 85-86, 90-91 (1987), *aff'd*, 833 F.2d 1582 (Fed. Cir. 1987). These cases are inapposite. For example, in *Wood*, the taxpayer's Eighth Amendment

claim, first raised in the refund suit, would have provided an alternative basis for recovery, separate from the grounds for deductibility of the amounts under sections 1341 or 165. 863 F.2d at 418, 422-23. Likewise, in *Mallette Brothers Construction Co.*, the taxpayer's claim that the payments at issue constituted loans from affiliates, first raised one week before trial in the refund suit, would have offered an alternative basis for refund, independent from the ground that the payments should be excluded from income as deductible by affiliates. 695 F.2d at 153-56.

Finally, in *Northern Illinois Gas Co.*, the taxpayer sought a refund of overpaid federal highway use taxes. 12 Cl. Ct. at 85. In its refund claim, the plaintiff took the position that its vehicles should be classified as "single unit vehicles," which were exempt from the tax. *Id.* at 85, 91. In a motion for summary judgment in its suit for refund, the taxpayer argued only that the IRS failed to follow the APA in issuing a ruling classifying certain trucks for purposes of the federal highway use tax. *Id.* at 85-86. The court held that the plaintiff's argument, which was based solely on the APA, was barred by the substantial variance doctrine. *Id.* at 91. That is because the APA argument provided an *entirely new ground* on which a refund could be granted. *Id.* That is not the case here, a crucial distinction not addressed in the government's Motion. As discussed above, assuming Halliburton prevails as it should on its argument that the Potential Penalty Regulation is invalid, that alone would not be a ground for a refund. Rather, Halliburton's argument goes to the government's counterargument that the Settlement Payment is a nondeductible fine or penalty. Unlike in *Northern Illinois Gas Co.*, prevail or not on the invalidity issue, Halliburton would still have to show that the Settlement Payment is a

14

business expense under section 162(a)—the sole ground for refund in this case. Therefore, the Motion should be denied.

### C. Even If Counts Two and Three Provide Separate Grounds for Refund, the Complaint Does Not Substantially Vary from the Refund Claim.

The substantial variance doctrine requires, as its terms suggest, *substantial* variance between the claim for refund and the suit for refund. *See Lockheed Martin Corp.*, 210 F.3d at 1371. Variance here, if any, is not substantial. The key inquiry is whether there is unfair surprise to the government. *See Lockheed Martin Corp. v. United States*, 39 Fed. Cl. 197, 201 (1997) (citing *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983)), *aff'd*, 210 F.3d 1366 (Fed. Cir. 2000). Here, the government was well on notice in the Refund Claim that Halliburton was challenging its argument that the Settlement Payment was a nondeductible fine or penalty. For example, the Refund Claim asserted that Halliburton "had no potential for any criminal liability for any *fine or penalty* under [local] law" with respect to the foreign government's frivolous charges, and that the Settlement Payment was "*not in lieu of any actual or potential fine or penalty*." Mot. Ex. 1, at -035, ECF No. 30 (emphasis added). That is the very language of the Potential Penalty Regulation. The government cannot credibly claim any surprise that Halliburton is challenging the very regulation on which the IRS based its denial of the Refund Claim.

## II. Application of the Substantial Variance Doctrine Here Would Not Advance the Purposes of the Rule Because the IRS Could Not Have Considered the Invalidity of the Regulation in Addressing the Refund Claim.

Application of the substantial variance doctrine here would be inconsistent with the policy behind the rule. In this regard, the Fifth Circuit has cautioned that the doctrine

should not be applied dogmatically. *El Paso CGP Co., L.L.C. v. United States*, 748 F.3d 225, 229 (5th Cir. 2014). The doctrine is intended to provide the IRS with an opportunity to consider and make an administrative determination regarding a taxpayer's refund claim in advance of a lawsuit, thereby limiting refund litigation. *See IA 80 Grp., Inc.*, 347 F.3d at 1074; *Mallette Bros. Const. Co.*, 695 F.2d at 155. "When the above policies would not be furthered, the court has not invoked the variance doctrine." *Shore v. United States*, 26 Cl. Ct. 826, 828 (1992).

Indeed, the substantial variance doctrine has not been applied where it would be pointless or unnecessary to give the IRS an opportunity to consider an issue in its administrative determination. This case starkly illustrates such a situation because the IRS could not have even considered Halliburton's invalidity arguments in rebuttal to the government's fine or penalty counterargument. IRS and Treasury policy forbid the IRS from considering invalidity in its administrative determination. IRS employees "must follow [Treasury] regulations until they are revised, removed . . . or invalidated by subsequent legislation or an unreviewable decision of a Federal court." Notice of Proposed Rulemaking Regarding Resolution of Federal Tax Controversies by the Independent Office of Appeals, 87 Fed. Reg. 55943. Absent those circumstances, because "[q]uestions regarding the validity of a Treasury regulation are determinations of general applicability resolved at the highest levels of the Treasury Department and the IRS," it is "inappropriate" for IRS employees to consider a taxpayer's invalidity arguments. *Id.* at 55942-43. This prohibition is reflected in IRS policy and in a proposed Treasury Regulation. *See* Prop.

Treas. Reg. § 301.7803-2(c)(19); Internal Revenue Manual 4.51.4.4.3(2)(h) (06-28-2017); Internal Revenue Manual 8.1.1.3.1(5) (01-09-2024).

Turning back to the purposes of the substantial variance doctrine, it would be pointless to give the IRS the "opportunity to consider" rebuttal arguments regarding invalidity of a regulation, such as the Potential Penalty Regulation, that the IRS is forbidden to consider.  Thus, on the facts of this case, applying the substantial variance doctrine could in no way advance its litigation-limiting function.  The substantial variance doctrine cannot force taxpayers to stuff their refund claims with empty words that have no impact on the ultimate resolution of their administrative refund claims.

Even if the IRS could have considered invalidity, neither Halliburton nor the IRS could have predicted the Supreme Court's landmark decision in *Loper Bright Enterprises* at the time Halliburton filed its Refund Claim in 2018.  Indeed, no one could have forecast that *Loper Bright Enterprises* would "upend[] [the] legal landscape," "discard[ing] [*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)] and par[ing] back agencies' leeway to interpret their own statutory authority." *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024).  Under *Loper Bright Enterprises*, if a government agency's interpretation of a statute "is not the best, it is not permissible."  144 S. Ct. at 2266.  This Court must determine whether the Potential Penalty Regulation is the best interpretation of the Code.

Courts have made clear the substantial variance doctrine similarly has not been applied to prevent a taxpayer from adapting to changes in law that post-date the filing of a refund claim.  *See Standard Lime & Cement Co. v. United States*, 329 F.2d 939, 941-43

(Ct. Cl. 1964).  As in *Standard Lime & Cement Co.*, Halliburton should not be barred from relying on the newly articulated framework set forth in *Loper Bright Enterprises*, or on other legal developments that post-date its Refund Claim, such as *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 144. S. Ct. 2440 (2024).  The variance doctrine does not require taxpayers to predict the future when filing their refund claims. Accordingly, the Motion should be denied.

## <u>CONCLUSION</u>

For the reasons set forth above, Halliburton respectfully requests that the Court deny the government's Motion.

DATED: December 12, 2024                                   Respectfully submitted,

<u>*/s/ George M. Gerachis*</u>
George M. Gerachis
Attorney-in-Charge
Texas State Bar No.: 07812500
S.D. TX Federal I.D. No.: 345390
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email: ggerachis@velaw.com
Telephone: 713-758-1056
Facsimile:  713-615-5612

OF COUNSEL:

Kathleen Pakenham *(Pro Hac Vice)*
VINSON & ELKINS L.L.P.
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Email:  kpakenham@velaw.com
Telephone: 212-237-0149
Facsimile:  917-591-1995

Christopher Popov
Texas State Bar No.: 24032960
S.D. TX Federal I.D. No.: 34615
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email:  cpopov@velaw.com
Telephone: 713-758-2636
Facsimile:  713-615-5033

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the foregoing on December 12, 2024, via the Court's CM/ECF System.

*/s/ George M. Gerachis*
George M. Gerachis
