IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HALLIBURTON COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO: 4:24-cv-02149 |

**UNITED STATES' (I) MOTION TO COMPEL DISCOVERY RESPONSES AND
(II) REQUEST FOR MODIFICATION AND EXTENSION
OF SCHEDULING ORDER**

/s/ *Jonathan L. Blacker*

JONATHAN L. BLACKER
Senior Litigation Counsel
Texas State Bar No. 00796215
jonathan.blacker2@usdoj.gov
(214) 880-9765
IGNACIO PEREZ DE LA CRUZ
Trial Attorney
Attorney-in-Charge
Massachusetts Bar No. 672618
SDTX No. 2433910
Ignacio.PerezdelaCruz@usdoj.gov
(214) 880-9759
U.S. Department of Justice
Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9742 (Fax)

ATTORNEYS FOR THE UNITED STATES

i

# **Table of Contents**

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF PROCEEDING ..................................................... 3

ISSUES TO BE RULED UPON ........................................................................ 5

SUMMARY ........................................................................................................ 5

BACKGROUND ................................................................................................ 7

ARGUMENT .................................................................................................... 10

   A.  The relevance standard for discovery is interpreted broadly. ................. 10

   B.  The Federal rules and the courts unequivocally disapprove of the repeated litany of boilerplate objections............................................................................. 12

      i.  Boilerplate objections are improper ................................................. 12

      ii.  Plaintiff uses its boilerplate objections to avoid producing clearly relevant information ...................................................................................... 17

      iii.  Plaintiff's refusal to produce a privilege log listing documents it is withholding on privilege grounds is improper ..................................... 22

   C.  Plaintiff's answers to the United States' discovery stating that it is producing subject to its objections and without waiving them effectively waives its objections.................................................................................................. 24

   D.  The documents the Plaintiff did produce were not produced in an organized manner that identifies the specific documents that are responsive to each discovery request...................................................................................................... 25

   E.  Based on the various disputes still under consideration by the Court, and the breadth of discovery still remaining, the United States requests an extension of all deadlines in this matter by ten (10) months. ............................................ 28

CONCLUSION ................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelman v. Boy Scouts of Am.*,
276 F.R.D. 681 (S.D. Fla. 2011) ............................................................15

*In re Adelphia Comm. Corp.*,
338 B.R. 546 (Bkty. S.D.N.Y. 2005) ......................................................26

*Alabama By–Products Corp. v. Patterson*,
258 F.2d 892 (5th Cir.1958) ...................................................................21

*Areizaga v. ADW Corp.*,
314 F.R.D. 428 (N.D. Tex. 2016) .............................................................5

*Colliot v. United States*,
No. 1:19-CV-212-LY, 2021 WL 2709676 (W.D. Tex. Mar. 24, 2021) ................................21

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips
Petroleum Co.*,
105 F.R.D. 16 (S.D.N.Y. 1984) ...............................................................27

*DIRECTV, Inc. v. Puccinelli*,
224 F.R.D. 677 (D. Kan. 2004) ................................................................27

*Exxon Mobil Corp. v. United States*,
253 F. Supp. 2d 915 (N.D. Tex. 2003) ....................................................12

*Glover v. Board of Education of Rockford*,
2004 WL 785270 (N.D. Ill. 2004) ...........................................................26

*Heller v. City of Dallas*,
303 F.R.D. 466 (N.D. Tex. 2014) .................................................13, 14, 24

*Hickman v. Taylor*,
329 U.S. 495 (1947) .................................................................................12

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
984 F.2d 422 (Fed. Cir. 1993) .................................................................11

*Liguria Foods, Inc. v. Griffith Labs., Inc.*,
2017 WL 976626 (N.D. Iowa Mar. 13, 2017) ...................................14, 16

*Lopez v. Warren Transport*,
2017 WL 551680 (Slip Copy N.D. Tex. Feb. 10, 2017) ..........................16

*Mallette Bros. Const. Co., Inc. v. United States,*
  695 F.2d 145 (5th Cir.1983) ...................................................................21

*Martino v. Kiewit New Mexico Corp.,*
  600 F. App'x 908 (5th Cir. 2015).........................................................20

*McLeod, Alexander, Powel & Apffel, P.C. v. Carlist,*
  894 F.2d 1482 (5th Cir.1990) ....................................................13, 14, 16

*Merrill v. Waffle House, Inc.,*
  227 F.R.D. 467 (N.D. Tex. 2005) .......................................................11, 14

*Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.,*
  No. 09-CV-11783, 2011 WL 669352 (E.D. Mich. Feb. 17, 2011)..........................15

*Phillips v. Hanover Ins. Co.,*
  No. 14-871, 2015 WL 1781873 (W.D. Okla. Apr. 20, 2015)...............................20

*RealPage, Inc. v. Enter. Risk Control, LLC,*
  2017 WL 1165688 (E.D. Tex. Mar. 29, 2017) ............................................24

*Residential Constructors, LLC v. ACE Property and Cas. Ins. Co.,*
  2006 WL 1582122 (D. Nev. 2006) ........................................................27

*Rodgers v. United States,*
  843 F.3d 181 (5th Cir. 2016) ...........................................................21

*S.E.C. v. Brady,*
  238 F.R.D. 429 (N.D. Tex. 2006) .......................................................14

*Sentis Grp., Inc. v. Shell Oil Co.,*
  763 F.3d 919 (8th Cir. 2014) ..........................................................11

*Simon v. State Farm Lloyds,*
  2015 WL 12777219 (S.D. Tex. Apr. 9, 2015) ............................................16

*Simpson v. Hexion Specialty Chemicals,*
  No. 06-798, 2007 WL 9710857 (M.D. La. Sept. 19, 2007)................................20

*Stiller v. Arnold,*
  167 F.R.D. 68 (N.D. Ind. 1996).........................................................26

*Third Pentacle, LLC v. Interactive Life Forms, LLC,*
  2012 WL 27473 (S.D. Ohio Jan. 5, 2012) ...............................................11

*U.S. S.E.C. v. Elfindepan, S.A.,*
  206 F.R.D. 574 (M.D.N.C. 2002) ........................................................27

iv

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir.1982) ................................................................23

*Wagner v. Dryvit Systems, Inc.*,
    208 F.R.D. 606 (D. Neb. 2001)...........................................................26

*Walker v. Lakewood Condo. Owners Ass'n*,
    186 F.R.D. 584 (C.D. Cal. 1999) ........................................................15

*Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*,
    No. CV 17-405-JWD-RLB, 2019 WL 1804849 (M.D. La. Apr. 24, 2019) ...........................20

*Weems v. Hodnett*,
    2011 WL 3100554 (W.D. La. July 25, 2011) ......................................17

**Statutes**

26 U.S.C. § 162(a) ...............................................................................7, 18

FCPA.......................................................................................................8, 9

Foreign Corrupt Practices Act (FCPA) ..................................................8

Internal Revenue Code § 162(a)(1) (26 U.S.C.) ................................. iv

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)......................................................................11, 14

Fed. R. Civ. P. 26(b)(5).............................................................................23

Fed. R. Civ. P. 34(b)(2)(B) .......................................................................13

Fed. R. Civ. P. 34(b)(2)(E) .......................................................................25

Federal Rule of Civil Procedure 34 .............................................. *passim*

Rule 26(a)(1)(A) ........................................................................................19

Rule 26(f)....................................................................................................29

Rules 33 and 34..........................................................................................14

Treas. Reg. § 301.6402–2(b)(1)................................................................20

## INTRODUCTION

Pursuant to the Court's guidance during the conference dated August 7, 2025, the United States respectfully files this Motion to Compel Discovery Responses under Federal Rules of Civil Procedure 26, 33, 34, 36, and 37. Additionally, the United States seeks an extension and modification of the scheduling order (Dkt. 27) to allow the Court to rule on the pending motions, as well as give the Parties time to hire expert witnesses, take depositions/complete discovery, and prepare for trial. The United Sates believes that extending all current deadlines by ten (10) months will be sufficient time for the Court to rule on the pending motions (*see* Dkts. 29, 36) and the Parties to hire experts, finish discovery, file dispositive motions, and/or prepare trial materials.

As explained below, Plaintiff seeks a federal tax deduction for a $35 million payment to the Federal Government of Nigeria ("FGN") as a business expense under § 162(a)(1) of the Internal Revenue Code (26 U.S.C.) allegedly made "to protect its employees and reputation, prevent disruption of its business, and ensure that its executives could freely travel." Complaint at ¶ 22 (Dkt. 1).

The United States asserts that the payment is a non-deductible "fine or similar penalty" under § 162(f). The $35 million payment was made "on behalf" of a former Halliburton subsidiary, KBR, to settle KBR's civil and criminal liabilities in FGN and the payment was one that Halliburton was contractually obligated to make this payment under a so called Master Separation Agreement ("MSA") that it had entered into in 2006 with KBR. This defense to the deductibility of the FGN payment will be referred to as the "KBR Indemnification Defense." As conceded in Halliburton's own documents,

Halliburton made payments on behalf of KBR in 2009 pursuant to the MSA (1) to the Securities and Exchange Commission ("SEC") to settle KBR's liabilities; and (2) to the Department of Justice ("DOJ") to pay KBR's criminal fines following KBR's indictment and guilty plea. Halliburton also admits that it made a payment of about $6 million of an $11 million civil settlement that KBR reached with the United Kingdom that settled KBR's civil exposure in that country.

In its Requests for Production, United States sought documents supporting the contention the KBR Indemnification Defense. For example, the United States requested production of documents relating to the MSA, as well as documents relating to investigations of Plaintiff in 2009 that ultimately led the FGN to file charges against the Plaintiff.

In response to the United States' discovery requests, Plaintiff improperly created its own self-serving definitions of "relevant" documents ("Relevant Subject Matter") and "relevant" time period ("Relevant Time Period") for purposes of its response. In essence, the Plaintiff asserted that a vast majority of the United States' discovery requests were not relevant because they were outside of what the Plaintiff considered was the Relevant Subject Matter and the Relevant Time Period. These limitations on the United States' discovery requests are improper and impede our ability to get documents crucial to bolster the United States' KBR Indemnification Defense. Plaintiff cannot to dictate what is and is not relevant in this matter. It cannot cut off access to evidence supporting the

2

KBR Indemnification Defense. This contravenes decades of case law in which courts have held that discovery is to be construed broadly.

## NATURE AND STAGE OF PROCEEDING

The United States filed a Joint Letter Requesting Conference (Dkt. 39) ("Joint Letter"). The discovery requests at issue, the responses in dispute, and correspondence between the Parties related thereto were attached as Exhibits A through L to the Joint Letter (Dkt. 39-2 – 39-13).[1]

The United States' discovery requests explicitly referenced the time frame for which it was seeking documents as including 2009 and 2010, 2011. Plaintiff objected to these requests (i) as being outside of Plaintiff's "Relevant Timeframe," consisting of only the last four months of 2010 (September 1, 2010, through December 31, 2010), and (ii) as requesting documents that were not within the Plaintiff's self-serving "Relevant Subject Matter," which it defined as:

a.    The raid of Plaintiff's offices in Lagos, Nigeria, on November 25, 2010, by the FGN;

b.    The detention of Plaintiff's employees in connection with the foregoing raid and interruption of Plaintiff's business in Nigeria;

c.    The criminal charges, which on or about September 3, 2010, the FGN reported that it had brought against Ibrahim Aliyu; AVM Abdullahi Dominic

---

[1] The United States is not re-attaching these documents as exhibits to this Motion. Rather, it will refer to the specific exhibits by docket number that were attached to the Joint Letter Requesting Conference (Dkt. 39).

Bello; Mohammed Gidado Bakari; Urban Shelter Limited; Intercellular Nigeria Limited; Sherwood Petroleum Limited; Tri-Star Investment Limited; Maizube Holdings Limited; TSKJ Nigeria Limited; Technip S.A.; Snamprogetti; Kellogg, Brown & Root Inc.; and Japan Gasoline Corp of Japan;

d.      The criminal charges, which on or about December 7, 2010, the FGN reported that it had brought against Halliburton Inc.; Halliburton Nigeria Limited; Kellogg, Brown & Root Inc [KBR]; Richard "Dick" Cheney; Albert "Jack" Stanley; William Utt; David Lesar; TSKJ Nigeria Limited; and TSKJ Consortium;

e.      The settlement between the FGN and Halliburton Energy Services, Inc. by agreement dated December 11, 2010 (the "***Settlement Agreement***"), pursuant to which Plaintiff paid $35,000,000 to the FGN (the "***Settlement Payment***"); and

f.      The demands for payment from Plaintiff by representatives of the FGN, and Plaintiff's responses thereto, in the fall of 2010, related to any of the foregoing."

*See* Dkt. 39-4, pp. 5-6.

Plaintiff also specified that "[a]ny response below that incorporates the definition of a term specified in paragraphs 1-3 above shall be understood to incorporate the above definition notwithstanding any different definition for such term in a particular Request." In other words, Plaintiff limited its production solely to documents within *its own timeframe and that it considered relevant*.

The United States sent Plaintiff a Second Set of Request for Production of Documents (Dkt. 39-9) ("Second Request"). The Second Request provided narrower timeframes based on the concerns raised by the Plaintiff; however, Plaintiff raised the same objections (Dkt. 39-10).

## ISSUES TO BE RULED UPON

(1)     Whether the Plaintiff improperly limited its production to its self-created "Relevant Timeframe" and "Relevant Subject Matters"?

(2)     Whether the Plaintiff waived its objections to the United States' discovery requests?

(3)     Whether the Plaintiff  should be required to produce its documents in a manner that identifies the specific documents that are responsive to each discovery request?

(4)     Based on the various disputes still under consideration by the Court, and the breadth of discovery still remaining, whether the deadlines in this matter should be extended?

## SUMMARY

The United States brings this Motion under Federal Rules of Civil Procedure 16, 26, 33, 34, 36, and 37. In the context of a motion to compel responses to requests for production under Federal Rule of Civil Procedure 34, "[t]he party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016).

It is not up to the Plaintiff to determine whether the documents requested are relevant to this case. Yet, this is what the Plaintiff did in creating its own definitions of relevant documents and the relevant time period and objecting based on these artificial limitations. Further, Plaintiff listed several standard boilerplate objections such as

"vague", "ambiguous," "overly broad, unduly burdensome, and not proportional to the needs of the case" without providing <u>any</u> evidence supporting these objections. The United States asserts that the Plaintiff waived these objections by ultimately responding to the requests (albeit using its own relevance guidelines).

The discovery sought by the United States is relevant to the issues in this case and, to the extent not waived, Plaintiff's objections are specious, vague, and insufficient under the Federal Rules of Civil Procedure. The United States requests that the Plaintiff be ordered to respond to its First and Second Requests for Production within 21 days of the Court's order, or, in the alternative, that Plaintiff be precluded from introducing any evidence in this case that would have been responsive to the above-described discovery requests.

Finally, the United States requests that the Court modify the existing scheduling order by extending all deadlines by ten (10) months to give the Court time to rule on pending motions, and give the Parties additional time to resolve the various disputes, complete discovery and prepare for trial. The deadlines for the Plaintiff to identify its expert witness was July 18, 2025 and the current discovery deadline is September 26, 2025, with dispositive motions due October 3, 2025, the joint pretrial materials due in January and docket call occurring in March of next year. Given the number of disputes outstanding, the United States does not believe it is feasible to meet these deadlines and thus requests additional time. In a meet and confer session, Plaintiff agreed that an extension is warranted, but the Parties disagree as to the length of the extension.

## BACKGROUND

As noted above, Plaintiff seeks an income tax refund of $11.375 million for its 2010 tax year. It alleges that the IRS erred in disallowing a $35 million payment made to the FGN as a deductible business expense under § 162(a) rather than a non-deductible "fine or similar penalty" under § 162(f). The United States contends the payment was for a fine or similar penalty and non-deductible.

In 1998, Plaintiff acquired KBR, Inc. ("KBR"). KBR was a member of a joint venture with France's Technip SA, Snamprogetti Netherlands B.V., a subsidiary of Saipem SpA of Italy; and Japan's JGC Corporation, collectively, the "TSKJ Joint Venture") in Nigeria bidding on engineering, procurement, and construction contracts to build liquified natural gas facilities on Bonny Island, Nigeria (Bonny Island Project).

From 1994 and 2004, the TSKJ Joint Venture bribed Nigerian government officials to win contracts for the Bonny Island Project. In 2004, pursuant to an internal investigation, Plaintiff uncovered documents with information about the TSKJ Joint Venture bribes to Nigerian government officials. Plaintiff reported its findings to U.S. government officials.

In November 2006, Plaintiff separated from KBR. To initiate this separation, the companies entered the MSA pursuant to which Plaintiff agreed to indemnify KBR for any amounts KBR was required to pay for certain known issues, including certain Foreign Corrupt Practices Act (FCPA) violations. Specifically, Plaintiff provided indemnification in favor of KBR under the MSA for certain contingent liabilities,

including an indemnification of KBR, as of November 20, 2006 (the date of the MSA)
for fines or other monetary penalties or direct monetary damages, including
disgorgement, as a result of a claim made or assessed by a governmental authority in
various countries, including Nigeria, related to alleged or actual violations of the FCPA
occurring prior to November 20, 2006, in connection with investigations pending as of
that date, including with respect to the construction and subsequent expansion by the
TSKJ Joint Venture of the natural gas liquefaction complex and related facilities on
Bonny Island. The MSA included in its definition of "current investigations" those by
"the DOJ, . . . the Commission, . . . the Serious Frauds Office in the United Kingdom, . .
. the Economic and Financial Crimes Commission, an agency of the executive branch of
the government of the Federal Republic of Nigeria." Moreover, the MSA defined a
"Governmental FCPA Claim" as a "a claim, whether civil or criminal, made by any
Governmental Authority of the United States, France, the United Kingdom, Switzerland,
Nigeria or Algeria."

In 2009, the DOJ charged KBR for its role in the TSKJ bribery scheme. KBR
pleaded guilty. At sentencing KBR was ordered to pay $402 million. Halliburton paid
$382 million under the indemnity provision of the MSA and KBR paid the remaining $20
million. Halliburton separately entered into a non-prosecution agreement with DOJ.

The SEC investigated Plaintiff and KBR for violations of the FCPA. In 2009, the
SEC bought a joint action against Plaintiff and KBR.  These charges were resolved with
an order for $177 million in disgorgement to be paid by Plaintiff or KBR. Halliburton

8

paid 100% of the $177 million under the indemnity provision of the MSA, while KBR paid nothing.

On September 3, 2010, FGN filed charges against KBR, its TSKJ Joint Venture partners, and other individuals and entities for various violations of FGN law relating to "gratification" payments to public officials concerned with the awarding the contract for the Bonny Island Project. The September 3, 2010 charges did not include charges against Plaintiff or any of its officers, directors, or employees.

On November 8, 2010, Halliburton and FGN officials met in London to address the FGN goal to bring to justice all parties involved in the TSKJ bribery scheme. On or about November 25, 2010, Nigerian (FGN) officials allegedly raided offices of TSKJ members or of their current or former parent companies. Among those arrested was an employee of Technip, and an employee of Saipem (the parent company of Snamprogetti Netherlands B.V). With KBR allegedly having no operations in Nigeria at the time, multiple employees of Halliburton were arrested instead.

On November 29, 2010, Halliburton's General Counsel sent a letter to the Attorney General of Nigeria ("AG") asking to meet about settling the TSKJ issue. In response, on December 1, 2010 letter, the attorney general responded that FGN was aware of the DOJ and SEC proceedings in the United States against the TSKJ Joint Venture and the resulting fines and civil disgorgement paid to those governments. The AG also stated, "Let me make it abundantly clear, for the avoidance of doubt, that the position and demand of the FGN is that the same measure and amount of monies paid in

9

other jurisdictions to settle the TSKJ Joint Venture matter be paid to the FGN." The AG

demanded settlement within 30 days of the letter "or [FGN] will activate alternative steps

to protect the interest of the people of Nigeria." Six days later, on December 7, 2010,

FGN filed charges against Plaintiff and others alleging that they made "gratification"

payments to public officials relating to the Bonny Island Project. On December 11, 2010,

Halliburton and FGN entered a Settlement and Non-Prosecution Agreement (Agreement)

pursuant to which Halliburton agreed, under the indemnity provision of the MSA, to pay

$35 million to the FGN.

　　　In February 2011, KBR settled an investigation by the United Kingdom by the

Serious Fraud Office (SFO) for about $11 million. Under the MSA, Halliburton

indemnified KBR about $5 million of the $11 million.

　　　Based on these facts, the United States is seeking information relating to how

KBR and Plaintiff interpreted the MSA as to their obligations to the DOJ, SEC, the FGN

and the UK, and generally payments made by Plaintiff to resolve issues relating to the

TSKJ Joint Venture. Plaintiff seeks to prevent the United States from discovering this

information.  Halliburton's and KBR's interpretation of the MSA at these key junctures

will inform how they viewed the MSA in relation to the FGN charges.

## **ARGUMENT**

### A.    The relevance standard for discovery is interpreted broadly.

　　　It is axiomatic that the "relevance" standard for discovery is broader than that

required for admissibility. *See* Fed. R. Civ. P. 26(b)(1) (information within the scope of

discovery need not be admissible at trial to be discoverable). Courts have traditionally interpreted the scope of relevance broadly for purposes of discovery. *See generally Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Relevancy for the purposes of Rule 26 is broadly construed"); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470-71 (N.D. Tex. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party . . . Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed" (citations omitted)).

Moreover, a party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail. *See Third Pentacle, LLC v. Interactive Life Forms*, *LLC*, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief—whether ultimately justified or not—provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure"); *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014) (Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the Parties' respective theories of the case," because "[l]itgation in general and discovery in particular ... are not one sided").

11

At this stage, the United States is not just seeking information that may be admissible at trial – it is seeking information that (i) is relevant to its defense, (ii) supports Plaintiff's claims and defenses, and (iii) will help us develop our case. *See Hickman v. Taylor,* 329 U.S. 495, 506 (1947) (the "discovery provisions are to be applied as broadly and liberally as possible"). The Plaintiff has the burden of proof in this matter.[2]

### B.    The Federal rules and the courts unequivocally disapprove of the repeated litany of boilerplate objections.

#### i.    Boilerplate objections are improper

Plaintiff repeats the same boilerplate objections throughout its responses to the United States' discovery, asserting relevance, overbroad, unduly burdensome, and not proportional to the needs of the case. Further, Plaintiff objects to the United States' discovery request(s) "to the extent [they seek] information protected from disclosure by the attorney-client privilege, the work-product protection, the federally authorized tax practitioner privilege, or *any other applicable privilege or protection.*" *See* Dkt. 39-4 and 39-10 (emphasis added). Unsatisfied with naming every privilege it can think of Plaintiff goes a step further to include "any other applicable privilege or protection." In other

---

[2] Taxpayers must prove the amount of any refund they claim. A party who sues the United States for a refund of taxes is said to have a "double burden." The taxpayer must not only prove that the Internal Revenue Service incorrectly determined the taxpayer's tax liability, but it must also establish the correct amount of its tax liability in order to prove that an overpayment has occurred. *Exxon Mobil Corp. v. United States*, 253 F. Supp. 2d 915, 932 (N.D. Tex. 2003).

words, Plaintiff is objecting on the grounds that some other unnamed protection or privilege may apply that it cannot list at the moment. This is boilerplate at its finest.

Notwithstanding its litany of objections, the Plaintiff goes on to state that Plaintiff "will produce non-privileged documents within the Relevant Timeframe . . . relating to the Relevant Subject Matters." This acknowledgement by the Plaintiff that it will produce documents despite/subject to/notwithstanding/in spite of its objections acts as a waiver, as explained *infra*.

It is beyond well-established that parties cannot make general or boilerplate objections to discovery requests. *See Heller v. City of Dallas,* 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("prohibition against general [or blanket] objections to discovery requests has been long established" (citation omitted)). Rather, the Federal rules require "specificity" when a party objects to discovery. Rule 34 requires that a response to a request for production "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The party resisting discovery "must show specifically ... how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Carlist*, 894 F.2d 1482, 1485 (5th Cir.1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982)). Thus, the party resisting discovery must show *how* the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill*, 227 F.R.D. at 477; *accord S.E.C. v. Brady*, 238 F.R.D.

13

429, 437–38 (N.D. Tex. 2006). Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate. *See McLeod*, *supra* at 1484–86; *Merrill*, *supra* at 477.

A party may not "refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26(b)(1), advisory committee note (2015). This is because "[i]n the face of [general] objections, it is impossible to know whether information has been withheld and, if so, why." *Heller*, 303 F.R.D. at 483 (quoting *Weems v. Hodnett*, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011)). Simply put, Plaintiff's boilerplate objections do not "state with specificity" the grounds for the objections.

In *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 2017 WL 976626 (N.D. Iowa Mar. 13, 2017), the court clarifies in detail the problems with boilerplate objections, noting that the key requirement in both Rules 33 and 34 is that objections require "specificity." *Id.* at *9. The court explains that "the mere statement by a party that the interrogatory or request for production was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection. . . . on the contrary, the party resisting discovery must show specifically how ... each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." *Id. (*citing *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 511–12 (internal quotation marks and citations omitted)); *see also Walker v. Lakewood Condo. Owners Ass'n,* 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla.

2011) (internal quotation marks and citations omitted) ("[J]udges in this district typically condemn boilerplate objections as legally inadequate or meaningless."); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.,* No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) (refusing to consider "[b]oilerplate or generalized objections")); *see id*. at 688 (identifying other reasons that "boilerplate" objections are disfavored).

Moreover, simply stating that a response is "subject to" one or more general objections does not satisfy the "specificity" requirement, because it leaves the propounding party unclear about which of the numerous general objections is purportedly applicable as well as whether the documents or answers provided are complete, or whether responsive documents are being withheld. *Laguria Foods, supra* at *11. Indeed, "the idea that such general or 'boilerplate' objections preserve any objections is an 'urban legend.'" *Id.*

Finally, the *Laguria Foods* court offers a solution to the problems caused by these objections:

> Our circuit judges are swamped with motions to compel regarding discovery. Stiff sanctions by judges for each violation would have a dramatic effect on these unauthorized boilerplate objections. The word would spread quickly, and the practice would suddenly stop. "Without waiving" and "subject to" objections are cute and tricky but plainly violate the purpose of our Rules of Civil Procedure: "to secure just, speedy and inexpensive determination of every action."

*Liguria Foods,* supra at *12.

In *Simon v. State Farm Lloyds*, 2015 WL 12777219, at *4 (S.D. Tex. Apr. 9, 2015), the court addressed the use of boilerplate objections, noting that Plaintiff was

15

> flagrantly abusing the discovery process by indiscriminately levying general objections and the exact same vague responses against all but the last interrogatory.  Plaintiff's objections are devoid of any facts explaining why an individual interrogatory is overly broad or burdensome, why the materials sought are irrelevant, or how production would exceed the scope of discovery.  Based on these boilerplate objections it is impossible for the Court to rule on the validity of the underlying request and whether the interrogatories can actually be considered overly burdensome, irrelevant, overly broad or requiring 'legal reasoning.' Plaintiff completely fails to meet the Rule 33(b)(4) requirement of objecting to each interrogatory with specificity.

*See also Lopez v. Warren Transport*, 2017 WL 551680 (Slip Copy N.D. Tex. Feb. 10, 2017).

To summarize, a party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain with specificity what portion of an interrogatory or document request is objectionable and why, and affirmatively explain whether any responsive information or documents have been withheld. So-called boilerplate or unsupported objections—even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as "an all-too-common example of the sort of 'Rambo tactics' that have brought disrepute upon attorneys and the legal system." *McLeod*, *supra* at 1486. As one court succinctly put it, "[g]eneral objections such as the ones asserted by Plaintiff are meaningless and constitute a waste of time for opposing counsel and the court. In the face of such objections, it is impossible to know whether information has been withheld and,

16

if so, why. This is particularly true in cases like this where multiple 'general objections'

are incorporated into many of the responses with no attempt to show the application of

each objection to the particular request." *Weems v. Hodnett*, 2011 WL 3100554, at *1

(W.D. La. July 25, 2011).

The courts are unequivocal in their disdain for the general, boilerplate objections

that Plaintiff makes in response to the United States' discovery. Plaintiff merely repeated

the same objections that our requests are "overbroad" and "unduly burdensome," "not

proportional," without producing any evidence of burdensomeness in the context of this

case or explaining why the requests were not proportional.

### ii.    Plaintiff uses its boilerplate objections to avoid producing clearly relevant information

Plaintiff refuses to produce basic (relevant) information requested in certain

requests for production. For example, In the United States' Request No. 12 (Second

Request), the United States requested documents and communications between (i)

Plaintiff and the DOJ, (ii) Plaintiff and the SEC, and (iii) Plaintiff and KBR relating to all

investigations conducted by the SEC and DOJ of KBR and Plaintiff relating to

"allegations of improper payments to government officials in Nigeria by the Joint

Venture through the use of agents or subcontractors in connection with the Bonny Island

project" as referenced by Plaintiff in its claim for refund. The Plaintiff responded that

"the fact that certain background factual information was summarized in Plaintiff's Form

1120X, Amended U.S. Corporation Income Tax Return, for its tax year ended December

31, 2010 (the '***Refund Claim'***), does not make the far-reaching universe of documents

17

requested by Defendant relevant to the issues in dispute in this case. Further, the

background factual information that was summarized in the Refund Claim is publicly

available." *See* Dkt. 39-10, p. 27.

Another example is Request No. 14. The United States requested:

All documents and Written Communications supporting Plaintiff's factual
assertions in its claim for refund that is the subject of this case that "KBR and
Halliburton settled with the SEC and DOJ in 2009, making certain payments to the
U.S. Government. On September 3, 2010, after the Federal Government of Nigeria
("FGN") learned of these settlements, the FGN filed charges in Nigeria against the
members of the Joint Venture and other individuals and entities connected with the
Bonny Island project," including documents showing how FGN "learned of these
settlements" as you state in your claim for refund.

Plaintiff responded:

Plaintiff further objects to Request No. 14 with respect to its use of the phrase
"supporting Plaintiff's factual assertions in its claim for refund that is the subject
of this case." In this case, Plaintiff is seeking an income tax refund for 2010,
claiming that the Settlement Payment (as defined in Plaintiff's Objections and
Responses to Defendant's First Request for Production of Documents) is
deductible under 26 U.S.C. § 162(a). The language referenced in Request No. 14
consists of statements of fact excerpted from the Refund Claim, which itself is not
"the subject of this case." Moreover, the facts described in Request No. 14 are
publicly available.

Plaintiff further objects to Request No. 14 to the extent it seeks information
protected from disclosure by the attorney-client privilege, the work-product
protection, the federally authorized tax practitioner privilege, or any other
applicable privilege or protection.

Plaintiff further objects to Request No. 14 to the extent it is duplicative and
cumulative of other requests contained within these Requests.

Plaintiff further objects to Request No. 14 as overly broad, unduly burdensome,
and not proportional to the needs of the case insofar as it seeks "all documents and
Written Communications" without identification or limitation of a timeframe.

With respect to the first so-called "factual assertion" referenced in Request No. 14,
Plaintiff further objects to Defendant's request to the extent it seeks information

18

not relevant to any party's claim or defense insofar as it requests "all documents and Written Communications" that "support" the so-called "factual assertion" that "KBR and Halliburton settled with the SEC and DOJ in 2009, making certain payments to the U.S. Government." These payments are not at issue in this case.

Moreover, "supporting" documents are publicly available, including in the materials that Defendant has provided as part of its disclosures.

With respect to the second so-called "factual assertion" referenced in Request No. 14, Plaintiff further objects to Defendant's request to the extent it seeks documents not within Plaintiff's possession, custody, or control insofar as it requests "documents showing how FGN 'learned of these settlements.'" Moreover, Plaintiff already has produced a copy of the September 3 Charges (HCS00000585-92) as well as copies of documents that accompanied such charges, including documents related to the settlements referenced in Request No. 14 (*see* HCS00000370-496).

Plaintiff will not produce documents or provide a privilege log in response to Request No. 14. Nevertheless, Plaintiff is willing to engage in discussions regarding appropriate stipulations with respect to the matters referenced in Request No. 14, even though they are not relevant to this case and without waiver of Plaintiff's relevance objections.

*Id.* pp. 28-30.

This response is riddled with problems and is emblematic of the Plaintiff's very narrow interpretation of the Rule 34 production requirements. First, Plaintiff, while acknowledging that the "language referenced in Request No. 14 consists of statements of fact excerpted from the Refund Claim," goes on to state that the Refund Claim "itself is not 'the subject of this case.'" Moreover, Plaintiff notes, "the facts described in Request No. 14 are publicly available."

The Fifth Circuit explains that "even if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses." *Martino v. Kiewit New*

*Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015). *See also Simpson v. Hexion Specialty Chemicals,* No. 06-798, 2007 WL 9710857, at *6 (M.D. La. Sept. 19, 2007) ("[T]o the extent plaintiffs have ... 'publicly available' documents in their possession, custody or control and they are relying upon them in support of their claims in this litigation, they have an obligation to produce them to the defendants."); *Phillips v. Hanover Ins. Co.,* No. 14-871, 2015 WL 1781873, at *2 n.1 (W.D. Okla. Apr. 20, 2015) (Noting that the "Court is aware of no requirement that information be unavailable to the public in order to be discoverable"... Courts consistently hold that parties have an obligation to produce even publicly available information.") (collecting cases)); *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.,* No. CV 17-405-JWD-RLB, 2019 WL 1804849, at *6 (M.D. La. Apr. 24, 2019). Plaintiff's "publicly available" objection is improper.

Plaintiff also objects to the request by asserting that the "Refund Claim" is "not the subject of this case." Suits for tax refunds are governed by § 7422(a), which requires that a claim for refund comply with "the regulations of the Secretary established in pursuance thereof." The relevant regulation requires that a claim for refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof...." Treas. Reg. § 301.6402–2(b)(1).

This regulation codifies the variance doctrine, under which "a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth

in its claim for a refund."[3] *Mallette Bros. Const. Co., Inc. v. United States,* 695 F.2d 145, 155 (5th Cir.1983). "The alleged error must be clearly and specifically set forth in the refund claim. A generalized plea of error will not suffice." *Id.* "All grounds upon which a taxpayer relies must be stated in the original claim for refund.... Anything not raised at that time cannot be raised later in a suit for refund." *Alabama By–Products Corp. v. Patterson,* 258 F.2d 892, 900 (5th Cir.1958).

The Fifth Circuit stated that a "taxpayer is not permitted to advanced one ground for refund in his claim filed with the Commissioner and thereafter rely upon an entirely different ground in a subsequent suit for refund, but is *confined to the scope of the grounds for refund asserted in his claim filed with the Commissioner.*" *Alabama By-Prods. Corp.*258 F.2d at 901 (emphasis added). In other words, a taxpayer must apprise the IRS of the grounds for the refund claim, including the factual assertions. *Rodgers v. United States*, 843 F.3d 181, 196 (5th Cir. 2016). A refund suit may not assert a ground for recovery which has not been specifically detailed, both legally and factually, in an administrative claim for refund. *Mallette Bros. Constr. Co., Inc.*, 695 F.2d at 155. *See also Colliot v. United States*, No. 1:19-CV-212-LY, 2021 WL 2709676, at *5 (W.D. Tex. Mar. 24, 2021). *See* Dkt. 29 (United States' Amended Motion to Dismiss Counts Two and Three of Plaintiff's Complaint).

---

[3] The United States moved to dismiss Counts 2 and 3 of the Plaintiff's Complaint on the grounds of variance. *See* Dkt. 29.

It is *precisely* the factual assertions in the Plaintiff's refund claim that are litigated here. And because factual assertions made by Plaintiff in its refund claim are at issue, they are therefore discoverable. Thus, the United States requested that the Plaintiff produce documents substantiating this assertion in its refund claim:

> KBR and Halliburton settled with the SEC and DOJ in 2009, making certain payments to the U.S. Government.  On September 3, 2010, after the Federal Government of Nigeria ("FGN") learned of these settlements, the FGN filed charges in Nigeria against the members of the Joint Venture and other individuals and entities connected with the Bonny Island project.  These charges filed by the FGN did not include Halliburton or any of Halliburton's officers, directors, or employees.

Dkt. 39-2.

The United States is requesting documents from Plaintiff asking it to substantiate *its factual claim* that FGN filed charges after it "learned of these settlements" (the SEC and DOJ settlements). Although the Nigerian charges were not against Halliburton, they were filed against KBR and under the MSA they were the basis for the amounts paid by Halliburton to Nigeria for which is seeks a tax deduction in this case. Discovery into the SEC and DOJ settlements, as well as Plaintiff's claim that the FGN "learned of these settlements," is more than relevant. It is a linchpin of this case in which Plaintiff seeks to deduct a multi-million dollar payment made to the FGN relating to the very charges Plaintiff references in its refund claim. Plaintiff's assertion that its refund claim is not a part of this case or the facts underlying it are not discoverable is nonsensical.

### iii.   Plaintiff's refusal to produce a privilege log listing documents it is withholding on privilege grounds is improper

The United States also notes that Plaintiff objected to the Request No. 14 "to the extent it seeks information protected from disclosure by the attorney-client privilege, the work-product protection, the federally authorized tax practitioner privilege, or any other applicable privilege or protection." In this same response, however, Plaintiff informs the United States that it "will not produce documents *or provide a privilege log* in response to Request No. 14." Dkt. 39-10, pp. 28-30.

It is of course black-letter law that when a party asserts a claim of privilege as to otherwise discoverable information, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.,* 682 F.2d 530, 541 (5th Cir.1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir.1981)).

The Plaintiff's assertion of the various privileges (attorney-client, work-product protection, federally authorized tax practitioner privilege, any other applicable privilege or protection) indicates that the Plaintiff is withholding documents responsive to the request on privilege grounds. Yet Plaintiff proclaims that it will not produce a privilege log. This is wrong and should not be sanctioned by this Court. Plaintiff must produce a

23

privilege log providing the required information on documents it is withholding in response to this and the other United States requests.

### C.    Plaintiff's answers to the United States' discovery stating that it is producing subject to its objections and without waiving them effectively waives its objections.

As explained above, Plaintiff objected to every discovery request with a litany of improper boilerplate objections. Then, it proceeded to indicate that it would produce documents. This effectively waives the Plaintiff's objections.

In *RealPage, Inc. v. Enter. Risk Control, LLC*, 2017 WL 1165688, at *1 (E.D. Tex. Mar. 29, 2017), the court addressed both the "subject to" issue and boilerplate objections. As an initial matter, the court found that the defendants waived each of their objections by including "subject to the foregoing" in its response. The court explained that the practice of including "subject to" or "without waiving" statements after objections is an "age-old habit comparable to belts and suspenders. This practice is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure.'" *Id.* (citing *Keycorp v. Holland*, 2016 WL 6277813, at *11 (N.D. Tex. Oct. 26, 2016)). The court notes that "such an objection and answer leaves the requesting [p]arty uncertain as to whether the question has actually been fully answered wondering as to the scope of the documents or information that will be provided as responsive.'" *RealPage,* 2017 WL 1165688 at *2 (quotations and citation omitted); *see also Heller,* 303 F.R.D. 486–87 (the court "agrees with judges in this circuit and other jurisdictions that the practice of responding to interrogatories and documents requests 'subject to'

24

and/or 'without waiving' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure'"). In short, Rule 34 does not allow the kind of hedging Plaintiff attempts in its responses, and as such, the United States asserts that Plaintiff waived its objections.

**D.    The documents the Plaintiff did produce were not produced in an organized manner that identifies the specific documents that are responsive to each discovery request.**

The documents the Plaintiff did produce were produced as a "document dump." The Plaintiff produced over 2100 pages of documents but has not provided any information as to which document(s) is/are responsive to which particular request. While this would ordinarily be solved by a litigant categorizing the documents according to the specific request, or at a minimum, providing the bates numbers of the responsive document(s) in the answer, the Plaintiff does neither. Rather, the Plaintiff states that "As you can tell from the face of the documents, they are responsive to numerous requests" and it "produced documents as they are kept in the usual course of business," citing Fed. R. Civ. P. 34(b)(2)(E). **Gov. Ex. 1.**

While Rule 34(b)(2)(E) gives litigations the option to produce documents as they are kept in the usual course of business or organize and label them to correspond to the categories in the request, courts have long frowned on "document dumps" that gives the requesting party no information or ability to determine which documents are responsive to particular request.

While Plaintiff proclaims that it produced the documents in the usual course of business, it provided no other information. The courts do not permit this. Without the required information, the United States can only guess, based on "the face of the documents," which documents correspond to certain requests. In short, the United States has no way of deciphering which documents are responsive to its requests. This "you can find the needle in our haystack" approach is simply unacceptable under the Federal rules.

It is indisputable that Rule 34 requires a party producing documents for inspection to either produce them as they are kept in the ordinary course of business or organize and label them to correspond to the categories in the requests. Fed. R. Civ. P. 34. Courts have held that producing documents or merely referencing previously produced documents does not comply with a party's obligation under Rule 34. *See Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34"); *Glover v. Board of Education of Rockford*, 2004 WL 785270 (N.D. Ill. 2004) (defendants were "incorrect in thinking they can haphazardly produce documents without reference to which request the documents are produced. Rather, Rule 34 requires that a party must organize and label responsive documents to correspond to the categories requested") (citing *Ferrito v. IKON Office Solutions, Inc.*, 2000 WL 1477188 (D. Kan.2000) (production of 2,000 pages of documents that were neither Bates stamped nor otherwise organized did not satisfy Rule 34) and *Arnold,* 167 F.R.D. at 71)); *In re Adelphia Comm. Corp.*, 338 B.R. 546, 551 (Bkty.

26

S.D.N.Y. 2005) (the "Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump'"); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16 at *44 (S.D.N.Y. 1984) (while a party may identify business records in response to interrogatories, a party is not permitted to "foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records" (*citing* Advisory Comm. N. to 1970 Amend. to Rule 33(c)); *Residential Constructors, LLC v. ACE Property and Cas. Ins. Co.*, 2006 WL 1582122 (D. Nev. 2006) ("The Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump,' with an instruction to the party to "go fish") (citing *see Hagemeyer North America v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 598 (E.D. Wis. 2004) and *Doe v. Nat'l Hemophilia Foundation,* 194 F.R.D. 516, 518 (D.Md.2000)); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680-81, 692 (D. Kan. 2004) ("Absent compliance with Rule 33(d) or attachment of appropriate documents, defendant may not direct plaintiffs to find answers from previously produced documents or identified witness lists… Plaintiff may not merely refer Defendants to other pleadings or its disclosures hoping that Defendants will be able to glean the requested information from them."); *U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002)*.*

In the end, the United States is neither in a position to determine which requests the documents and information produced relate to nor is it required to under the Federal rules. Indeed, one of the purposes of discovery from the opposing party is to learn which

documents from a larger universe of documents that party will be using to support its claims. The Plaintiff's responses are missing the required information, are incomplete, and should not be condoned by the Court.

### E. Based on the various disputes still under consideration by the Court, and the breadth of discovery still remaining, the United States requests an extension of all deadlines in this matter by ten (10) months.

The impending deadlines have compelled us to file this motion now. The Plaintiff's expert report was due in July, the United States' expert report is currently due this month, discovery ends September 26, 2025, dispositive motions are due at the end of October, and pretrial materials and docket call are early next year.

There are several disputes still outstanding. First is the United States' Motion to Dismiss Counts II and III. Dkt. 29. Second is Plaintiff's Motion to Compel. Dkt. 36. And finally, this Motion to Compel, which will likely not be fully brief and decided prior to the end of discovery in late September. Notwithstanding the two motions to compel, the United States believes the Parties have been diligent in conducting other discovery. Both sides have produced other documents on a rolling basis and tried to resolve disputes without Court intervention.

And the United States has not chosen a ten (10) month extension at random. It served its first discovery request in February to which Plaintiff has produced some documents on a rolling basis, with its last production in July. Further, based on the Plaintiff's agreed at the conference with the Court on August 7, 2025 to produce

additional documents there may be additional documents the Plaintiff will be producing. Thus, it is unlikely the parties can complete discovery by the end of September.

Moreover, as noted in the conference, the United States intends to dispute some of the Plaintiff's claims of privilege. It will also challenge the privilege log produced by KBR in response to the United States' subpoena. *See* Dkt. 39-14.

The United States is preparing a third round of discovery requests, for which Plaintiff might again need five months to respond. The United States further anticipates Plaintiff will object to this discovery (as they have done the last two discovery requests), which could necessitate the Court's intervention.

Finally, the United States will need additional time to find and hire an expert witness. Plaintiff has not yet served its expert report. Assuming it is an expert to speak on foreign (Nigerian) law, the United States may respond. This would require several steps in order for the United States to hire a foreign expert.[4] Since Rule 26(f) conference last year, staffing levels at DOJ have unexpectedly dropped, requiring longer discovery windows than historically requested. The United States believes extending all current deadlines by ten (10) months will give the Parties adequate time to prepare this case.

---

[4] The United States would seek a two month gap, compared to the current one-month gap, between the deadline for Plaintiff to make its expert disclosures and the deadline for the United States to makes its expert disclosures.

## <u>CONCLUSION</u>

The United States requests this Court enter an order compelling the Plaintiff to produce complete and thorough responses to its discovery. The Plaintiff's (i) self-created definitions of relevant documents and relevant time period, (ii) boilerplate objections, and (iii) refusal to provide a privilege log for withheld documents prevent the United States from adequately defending this case. Plaintiff should be compelled to, within 21 days of the Court's order, produce all documents responsive to the United States' First and Second Requests. In the alternative, the United States respectfully requests that Defendant be precluded from introducing any evidence in this case that would be responsive to these discovery requests. Finally, the United States requests a ten (10) month extension of all current deadlines to allow the Court to rule on pending motions and for the Parties to their complete preparation of this case.

/s/ *Jonathan L. Blacker*
JONATHAN L. BLACKER
Senior Litigation Counsel
Texas State Bar No. 00796215
jonathan.blacker2@usdoj.gov
(214) 880-9765
IGNACIO PEREZ DE LA CRUZ
Trial Attorney
Attorney-in-Charge
Massachusetts Bar No. 672618
SDTX No. 2433910
Ignacio.PerezdelaCruz@usdoj.gov
(214) 880-9759
U.S. Department of Justice
Tax Division
717 N. Harwood, Suite 400
30

Dallas, Texas 75201
(214) 880-9742 (Fax)

ATTORNEYS FOR THE UNITED STATES

## **CERTIFICATE OF SERVICE**

I, Jonathan L. Blacker, certify that on September 2, 2025, I electronically filed this pleading using the ECF system, which will send notification to all counsel of record.

/s/ *Jonathan L. Blacker*
JONATHAN L. BLACKER