# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **HALLIBURTON COMPANY,** | |
| **Plaintiff,** | **Civil Action No. 4:24-cv-02149** |
| **v.** | |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE TO UNITED STATES' MOTION TO COMPEL DISCOVERY RESPONSES AND REQUEST FOR MODIFICATION AND <u>EXTENSION OF SCHEDULING ORDER</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ......................................................... 2

ISSUES TO BE RULED UPON ................................................................................... 4

ARGUMENT .................................................................................................................. 6

   I.   The Court Rightly Determined that the Documents Requested by the United States Are Not Relevant and Not Discoverable. ...................................................... 6

   II.  Halliburton Properly Objected to the United States' Sweeping Document Requests. ............................................................................................................. 10

     A.   Halliburton Properly Objected to the Requests Insofar as They Seek Non-Discoverable Information. .................................................................................. 10

     B.   Halliburton Properly Objected to Each of the Requests with Specificity. .......... 15

   III.  Halliburton Produced Documents as They Were Kept in the Usual Course of Business. .......................................................................................................... 18

   IV.  The United States' Ten-Month Extension Request Is Unwarranted. ...................... 21

   V.   The United States Repeatedly Has Failed to Follow Proper Procedure. ................ 24

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adelman v. Boy Scouts of Am.*,
    276 F.R.D. 681 (S.D. Fla. 2011) ..................................................................... 16

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*,
    No. C 04-05368 SI, 2006 WL 2578264 (N.D. Cal. Sept. 6, 2006) ............................ 24

*Camoco, LLC v. Leyva*,
    333 F.R.D. 603 (W.D. Tex. 2019) ..................................................................... 7

*Clapper v. Am. Realty Invs., Inc.*,
    No. 3:14-CV-2970-L, 2019 WL 317118 (N.D. Tex. Jan. 23, 2019) ................ 21, 22, 23

*Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*,
    105 F.R.D. 16 (S.D.N.Y. 1984) ........................................................................ 19

*Crosby v. La. Health Serv. & Indem. Co.*,
    647 F.3d 258 (5th Cir. 2011) ............................................................................. 7

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) ....................................................... 10, 14, 15, 16

*In re Accutane Prods. Liab. Litig.*,
    923 F. Supp. 2d 1349 (M.D. Fla. 2013) ............................................................... 23

*Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*,
    320 F.R.D. 168 (N.D. Iowa 2017) ..................................................................... 16

*Lopez v. State Farm Lloyds*,
    348 F.R.D. 419 (W.D. Tex. 2025) ....................................................................... 5

*Martinez v. Univ. Tex. Aus.*,
    No. 1:20-CV-1175 (DAE), 2022 WL 22887025 (W.D. Tex. Sept. 30, 2022) .............. 21

*Miller v. Univ. of Houston Sys.*,
    No. 4:15-CV-002927, 2022 WL 22879671 (S.D. Tex. Oct. 20, 2022) ........................ 7

*R.E. Dietz Corp. v. United States*,
    939 F.2d 1 (2d Cir. 1991) ................................................................................. 17

*RealPage, Inc. v. Enter. Risk Control, LLC*,
    No. 4:16-CV-00737, 2017 WL 1165688 (E.D. Tex. Mar. 29, 2017) ................. 5, 10, 14

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
    110 F.3d 253 (5th Cir. 1997) ............................................................................. 21

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003) .......................................................................... 6, 21

*Simon v. State Farm Lloyds*,
    No. 7:14-CV-251, 2015 WL 12777219 (S.D. Tex. Apr. 9, 2015)................................ 16

*Stiller v. Arnold*,
    167 F.R.D. 68 (N.D. Ind. 1996) ................................................................ 19

*TIGI Linea Corp. v. Pro. Prods. Grp., LLC*,
    No. 4:19-cv-00840-RWS-KPJ, 2021 WL 1947341 (E.D. Tex. May 14, 2021) ............. 7

*TradeWinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901 JFK, 2011 WL 4949928 (S.D.N.Y. Oct. 18, 2011) ........................ 18

*United States v. Louisiana*,
    No. 11-470-JWD-RLB, 2015 WL 2453719 (M.D. La. May 22, 2015) ...................... 23

*Wagner v. Dryvit Sys., Inc.*,
    208 F.R.D. 606 (D. Neb. 2001) ................................................................ 19

**Statutes**

26 U.S.C. § 162(a) .................................................................................... 1

**Rules**

FED. R. CIV. P. 16(b)(4) ........................................................................ 5, 21

FED. R. CIV. P. 26(b)(1) ......................................................................... 5, 7

FED. R. CIV. P. 26(b)(2) ............................................................................ 18

FED. R. CIV. P. 26(b)(2)(C) ........................................................................ 7

FED. R. CIV. P. 26(b)(5) advisory committee's note (1993).............................. 11

FED. R. CIV. P. 33 ..................................................................................... 19

FED. R. CIV. P. 33(c) ................................................................................ 19

FED. R. CIV. P. 34 ................................................................................ 14, 19

FED. R. CIV. P. 34(a) .................................................................................. 7

FED. R. CIV. P. 34(b)(2)(B)................................................................. 5, 15, 18

FED. R. CIV. P. 34(b)(2)(C)...................................................................... 5, 11

FED. R. CIV. P. 34(b)(2)(E)(i)................................................................... 5, 18

FED. R. CIV. P. 34(b)(2)(E)(ii) ................................................................... 18

**Regulations**

26 C.F.R. § 1.162-21(b)(1)(iii) .................................................................. 22

**Other Authorities**

Court Procedures of the Hon. George C. Hanks, Jr., Procedure 6.E ................................ 24

Court Procedures of the Hon. George C. Hanks, Jr., Procedure 6.E.1 ............................ 25

Court Procedures of the Hon. George C. Hanks, Jr., Procedure 6.E.2 ........................... 25

U.S. District Court, S.D. Tex. Local Rule 7.7 .................................................... 24

## **INTRODUCTION**

This case is about whether a single payment (the "***Settlement Payment***") made by Plaintiff Halliburton Company ("***Halliburton***") in December 2010 to protect its employees and reputation, prevent business disruption, and ensure that its executives could freely travel amid a harassment campaign by a foreign government is deductible as an ordinary and necessary business expense under 26 U.S.C. § 162(a).

Defendant United States of America (the "***United States***") asks the Court to ignore the narrow scope of this case and compel Halliburton to produce volumes of documents regarding other payments, in other years, to other entities, under entirely different circumstances, none of which has any bearing on the deductibility of the Settlement Payment. As the Court rightly concluded during the discovery hearing on August 7, 2025 (the "***August 7 Hearing***"), the documents requested by the United States are irrelevant and not discoverable. In its Motion to Compel Discovery Responses and Request for Modification and Extension of Scheduling Order (the "***Motion***"), the United States second guesses the Court's decision, rehashing the same arguments that the Court already rejected.

The Motion also includes a series of scattershot grievances regarding Halliburton's objections and responses to the United States' discovery requests, none of which were raised in a pre-motion joint letter for the Court's consideration at the August 7 Hearing. The United States asserts several meritless and frankly absurd positions—including that Halliburton was obligated to identify non-discoverable documents on its privilege log and

1

waived its objections by responding in part to the United States' expansive requests (as required under the Federal Rules of Civil Procedure).[1]

Finally, despite the Court's determination that the United States is not entitled to documents regarding other proceedings and other payments, the United States asks for a ten-month extension of the schedule, the deadlines for which assumed the parties would proceed with reasonable diligence. Among other reasons, the United States requests this lengthy extension because—it admits—it has yet to locate a foreign law expert, even though foreign law clearly has been at issue since the inception of this case. While Halliburton agrees that a limited four-month extension of the schedule is appropriate, the United States should not be rewarded for its failure to prepare its case with an extraordinary ten-month extension. The Motion should be denied.

## NATURE AND STAGE OF THE PROCEEDING

This is a federal income tax refund suit brought by Halliburton on June 6, 2024. [ECF 1]. The United States filed its answer on September 23, 2024. [ECF 20]. The Court entered a Docket Control Order on November 19, 2024. [ECF 27].

The United States served its First Request for Production of Documents (the "***First Requests***") on Halliburton on February 11, 2025. Declaration of George M. Gerachis ("***Gerachis Decl.***") ¶ 2, Ex. A. The First Requests are extraordinarily broad and imprecise and request substantial amounts of non-discoverable information. *See infra* at 10-18. Indeed, fourteen of the twenty-two requests seek "all documents" without any timeframe

---

[1] All Rule references are to the Federal Rules of Civil Procedure.

limitation, and certain requests fail to identify any subject matter whatsoever. Gerachis Decl. Ex. A. For example, Request No. 3 seeks "all communications" from 2009 to 2010 between Halliburton and its former CEO, former Vice President Dick Cheney, or its then-CEO, David Lesar, (or their agents) regardless of subject matter. *Id.* at 8.

Halliburton timely served its objections and responses to the First Requests on March 13, 2025. Gerachis Decl. ¶ 3, Ex. B. In responding to the First Requests, Halliburton defined "Relevant Subject Matters"[2] and a "Relevant Timeframe" of September 1–December 31, 2010 to focus discovery on the events related to the deductibility of the Settlement Payment. Gerachis Decl. ¶ 4.

The United States served its Second Request for Production of Documents (the "**Second Requests**") on Halliburton on May 7, 2025. Gerachis Decl. ¶ 8, Ex. F. The Second Requests were plagued by largely the same issues as the First Requests. *See, e.g.*, *infra* at 15-16. Halliburton timely served its objections and responses to the Second Requests on June 6, 2025. Gerachis Decl. ¶ 10, Ex. H.

---

[2] As defined in Halliburton's Objections and Responses to the United States' First Request for Production of Documents, the Relevant Subject Matters refer to (a) the raid of Halliburton's offices in Lagos, Nigeria, on November 25, 2010, by the Federal Government of Nigeria ("**FGN**"); (b) the detention of Halliburton's employees in connection with the foregoing raid and interruption of Halliburton's business in Nigeria; (c) the criminal charges, which on or about September 3, 2010, the FGN reported that it had brought against "TSKJ Nigeria Limited" (among others); (d) the criminal charges, which on or about December 7, 2010, the FGN reported that it had brought against "TSKJ Nigeria Limited" (among others); (e) the settlement between the FGN and Halliburton Energy Services, Inc. by agreement dated December 11, 2010 (the "**Settlement Agreement**"), pursuant to which Halliburton paid $35,000,000 to the FGN (*i.e.*, the Settlement Payment); and (f) the demands for payment from Halliburton by representatives of the FGN, and Halliburton's responses thereto, in the fall of 2010, related to any of the foregoing.

In responding to each of the United States' document requests, Halliburton specified whether it would produce documents in response to such request and, if so, which documents it would produce. *See generally* Gerachis Decl. Exs. B, H.

The parties exchanged various correspondence regarding the United States' requests, particularly whether the United States was entitled to certain categories of documents that Halliburton contends are not discoverable. *See* Gerachis Decl. Exs. C-E, G, I, K, L. The parties held meet and confers on April 29, June 3, and July 1, 2025, but were unable to resolve their differences. Gerachis Decl. ¶ 15. On July 10, 2025, the parties requested a hearing with the Court to resolve this impasse. [ECF 39].

The Court held a hearing on August 7, 2025 (*i.e.*, the August 7 Hearing). *See* [ECF 41]. During the August 7 Hearing, the Court indicated that the United States was not entitled to documents beyond those that Halliburton already had produced, but that the United States would be allowed to file a motion to compel to preserve the issue for appeal. Gerachis Decl. ¶ 16; [ECF 41]. The Court also encouraged the parties to cooperate regarding an extension of the case schedule, but permitted the United States to move for an extension if the parties could not agree. Gerachis Decl. ¶ 16; [ECF 41].

## ISSUES TO BE RULED UPON

In the Motion, the United States seeks (1) to compel the production of documents in response to its First and Second Requests and (2) to obtain a ten-month extension of the schedule, including an extra month after Halliburton designates its expert to designate its own expert.

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In the context of a motion to compel, "unless the relevancy of a discovery request is facially clear, the movant (*i.e.*, the party seeking discovery) must specifically articulate why the request is relevant to the claims or defenses in the case. The non-movant (*i.e.*, the party resisting discovery), on the other hand, must show specifically how each request is not relevant or how each request is overly broad, burdensome or oppressive." *Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 422 (W.D. Tex. 2025) (citations omitted).

With respect to requests for production of documents, each response to a request for production "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "If a party chooses to object to part of a request, the party 'must specify the part and permit inspection of the rest.'" *RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1165688, at *3 (E.D. Tex. Mar. 29, 2017) (quoting FED. R. CIV. P. 34(b)(2)(C)). A party producing documents in response to a request for production "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i).

With respect to a motion for an extension, "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be

met despite the diligence of the party needing the extension.'"  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (citation omitted).

Based on those standards, Halliburton respectfully requests that the Court deny the Motion in its entirety.  Halliburton also respectfully requests that the Court modify the Docket Control Order to provide for a limited four-month extension of the schedule as set forth in the Proposed Order attached hereto.

## ARGUMENT

In the Motion, the United States rehashes already-rejected arguments, raises a series of new, facially absurd arguments, and otherwise demonstrates a lack of diligence and cooperation.  The United States also seeks an inordinate ten-month extension of the schedule based on—by its own admission—its failure to find an expert witness well over a year into this case.  The Court should deny the Motion in its entirety.

### I.  The Court Rightly Determined that the Documents Requested by the United States Are Not Relevant and Not Discoverable.

The only issue in this case is whether the December 2010 Settlement Payment is deductible for federal income tax purposes as an ordinary and necessary business expense. Yet the United States has requested volumes of documents concerning other proceedings and other payments, to other entities, in other years, under entirely different circumstances. During the August 7 Hearing, the Court rightly determined that these documents are not relevant and therefore not discoverable.  In the Motion, the United States attempts to second guess the Court's determination based on a retread of the same arguments that the Court already considered and rejected.  The Motion should be denied.

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Irrelevant documents are not discoverable. *See* FED. R. CIV. P. 34(a) (providing that a party may serve a request for production "within the scope of Rule 26(b)"); *see also, e.g.*, *Miller v. Univ. of Houston Sys.*, No. 4:15-CV-002927, 2022 WL 22879671, at *3 (S.D. Tex. Oct. 20, 2022) (where only one hiring cycle was at issue, finding requests for documents regarding other cycles "not relevant, and therefore, not discoverable"); *TIGI Linea Corp. v. Pro. Prods. Grp., LLC*, No. 4:19-cv-00840-RWS-KPJ, 2021 WL 1947341, at *9 (E.D. Tex. May 14, 2021) (finding materials that had no bearing on the propounding party's ability to prove its case "irrelevant, and hence, . . . not discoverable").

"The scope of discovery is within the sound discretion of the trial judge." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019) (citation omitted). "However, the Court must limit discovery, if it determines, on motion or on its own, that . . . 'the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *Id.* at 606-07 (quoting FED. R. CIV. P. 26(b)(2)(C)). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citations omitted).

The United States threatens to turn discovery in this case into a fishing expedition by requesting documents that have no bearing whatsoever on the deductibility of the Settlement Payment. It should not be permitted to do so.

Halliburton has alleged as follows: During the fall of 2010, a representative of the FGN contacted Halliburton, demanding a substantial payment. Compl. [ECF 1] ¶ 16.

After Halliburton declined this demand, the FGN raided Halliburton's Nigeria offices and arrested and detained Halliburton's personnel. *Id.* ¶¶ 17-18. Following the raid, the FGN threatened to "activate alternative steps" if Halliburton failed to satisfy the FGN's demands for payment within 30 days. *Id.* ¶ 20. On or about December 7, 2010, the FGN reported that it had brought charges against Halliburton, its affiliates, and several executives. *Id.* ¶ 21. These charges were baseless, and only one of the sixteen counts therein carried a potential fine (which was equal to approximately $130). *Id.*

On or about December 11, 2010, Halliburton and the FGN entered into the Settlement Agreement, pursuant to which Halliburton paid the Settlement Payment. *Id.* ¶ 22. Under the terms of the Settlement Agreement, the FGN agreed (among other things) "not [to] take any steps to suggest or enforce any exclusion, restriction, limitation, disadvantage or debarment which prevents [Halliburton] from actively executing [its] existing projects, pursuing [its] business and bidding for other or further projects or work within Nigeria." *Id.* ¶ 23. Halliburton entered into the Settlement Agreement and made the Settlement Payment to safeguard its employees and reputation, avoid further business disruptions, and ensure that its executives could freely travel. *Id.* ¶ 22. Other matters resolved through the Settlement Agreement are incidental to those purposes and have no bearing on the deductibility of the Settlement Payment.

At issue here, the United States has requested documents concerning (a) the Master Separation Agreement (the "*MSA*"), dated November 20, 2006, between Halliburton and KBR, Inc. ("*KBR*"); (b) matters and proceedings outside of Nigeria; and (c) payments made by Halliburton in years other than 2010 to entities other than the FGN. Motion at 2.

None of these documents are relevant to the deductibility of the Settlement Payment.  In an effort to compromise, Halliburton agreed to produce non-privileged documents (and log privileged documents) within the Relevant Timeframe related to the interpretation or application of the indemnification provisions of the MSA with respect to demands for payment by the FGN related to the Relevant Subject Matters (including the Settlement Payment).[3]  *See, e.g.*, Gerachis Decl. Ex. H at 12.

However, Halliburton did not agree to produce any documents with respect to other payments or other proceedings.  *See, e.g.*, *id.* at 11-12.  As the Court already recognized at the August 7 Hearing, such documents are not relevant and therefore not discoverable.  The interpretation or application of the MSA with respect to other payments made in years other than 2010, to entities other than the FGN, relating to different matters, involving different laws, different commercial contexts, and different factual circumstances simply have no bearing on the deductibility of the Settlement Payment.

Contrary to the United States' assertions, the application of the MSA to payments other than the Settlement Payment would not "inform how [Halliburton and KBR] viewed the MSA in relation to the FGN charges."  Motion at 10.  In support of its argument, the United States improperly relies on nothing but self-serving narrative without citation to evidence.  *See* Motion at 7-10; *see also infra* at 24.  Moreover, the Motion only further demonstrates that the application of the MSA to a given payment depends exclusively on

---

[3] Without waiving its relevance objections, Halliburton also proposed that the parties might be able to stipulate to certain facts related to other proceedings and payments if the United States identified which facts it sought to establish.  *See, e.g.*, Gerachis Decl. Ex. I.  The United States refused to engage meaningfully on this topic.  *See* Gerachis Decl. Ex. L at 4.

how the terms of the MSA apply to the specific circumstances surrounding the particular payment in question. *See* Motion at 7-8 (reciting definitions from the MSA). Here, the circumstances surrounding the Settlement Payment unfolded quickly in the fourth quarter of 2010 and culminated in the December 2010 Settlement Agreement between Halliburton and the FGN. It would be improper to determine any obligations under the MSA with respect to the Settlement Payment by looking beyond the four corners of that agreement or by considering other payments, in other years, to other parties.

The Court rightly determined that the documents in dispute are not discoverable. Because the United States asks this Court to reconsider its ruling based on the same already-rejected arguments, the Court should reaffirm its decision and deny the Motion.

## II. Halliburton Properly Objected to the United States' Sweeping Document Requests.

The United States' document requests are expansive and imprecise, reaching documents wholly unrelated to the matters at issue. Faced with these requests, Haliburton has been forced to articulate why facially overbroad requests seek non-discoverable information and, where possible, to tie the United States' requests to discoverable information. The United States' grievances about Halliburton's objections and responses to its requests are unfounded and reflect a flawed understanding of discovery.

### A. Halliburton Properly Objected to the Requests Insofar as They Seek Non-Discoverable Information.

"[A] responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable." *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014); *see also RealPage*, 2017 WL 1165688, at *3 ("If a party chooses to object to

part of a request, the party 'must specify the part and permit inspection of the rest.'")
(quoting FED. R. CIV. P. 34(b)(2)(C)).  Where a party objects in part to a document request
on the basis that some—but not all—of the requested documents are not discoverable, it
must (1) produce the non-privileged documents that it believes are discoverable and (2)
identify the privileged documents that it believes are otherwise discoverable.    The
following comment to Rule 26 illustrates these basic principles:

> The obligation to provide pertinent information concerning withheld
> privileged materials applies only to items "otherwise discoverable."  If a
> broad discovery request is made—for example, for all documents of a
> particular type during a twenty year period—and the responding party
> believes in good faith that production of documents for more than the past
> three years would be unduly burdensome, it should make its objection to the
> breadth of the request and, with respect to the documents generated in that
> three year period, produce the unprivileged documents and describe those
> withheld under the claim of privilege.  If the court later rules that documents
> for a seven year period are properly discoverable, the documents for the
> additional four years should then be either produced (if not privileged) or
> described (if claimed to be privileged).

FED. R. CIV. P. 26(b)(5) advisory committee's note (1993).

Halliburton undeniably has complied with the procedures outlined above.  Insofar
as the United States contends that Halliburton's discovery responses are "improper," the
United States misunderstands fundamental discovery rules.

*First*, the United States complains that Halliburton defined Relevant Subject Matters
and a Relevant Timeframe in responding to the United States' requests.  Motion at 2-3.
There is nothing improper about this.  The United States' poorly drafted requests capture
volumes of documents that have nothing to do with the issues in this case.  As noted above,
Request No. 3 of the First Requests seeks "all communications" from 2009 to 2010

11

between Halliburton and its former CEO, former Vice President Dick Cheney, or its then-CEO, David Lesar, (or their agents) regardless of subject matter. Gerachis Decl. Ex. A at 8. The number of non-discoverable documents picked up by this expansive request for all documents between a company and its CEO during a two-year window is staggering. As another example, Request No. 2 of the First Requests seeks "all communications" from 2009 to 2010 between Halliburton (which then-operated a large-scale commercial operation in Nigeria with hundreds of employees) and the FGN, regardless of subject matter. *Id*. at 7-8. Again, this request reaches hosts of communications regarding topics far removed from this case, such as licensing, permitting, or immigration.

Thus, in its responses, Halliburton defined Relevant Subject Matters and a Relevant Timeframe and agreed to produce responsive documents within that timeframe related to those subject matters. *See, e.g.*, Gerachis Decl. Ex. B at 5-11. The Relevant Subject Matters and Relevant Timeframe encompass the events relevant to the deductibility of the Settlement Payment. Despite repeated invitations, *see, e.g.*, Gerachis Decl. Exs. D, G, the United States has yet to point to any other events that have any bearing on that question.

*Second*, the United States contends that Halliburton improperly refused to "produce a privilege log listing documents it is withholding on privilege grounds." Motion at 22 (heading). The United States is wrong on the facts and the law. Halliburton provided the United States with a privilege log that identifies and describes the documents it believes are otherwise discoverable over which it has asserted a claim of privilege. Gerachis Decl. ¶ 18. To the extent the United States suggests otherwise, that is just not true.

In making its argument, the United States points to Halliburton's response to Request No. 14 of the Second Requests.  Motion at 23.  This request seeks "[a]ll documents and Written Communications supporting" the following statements:

> KBR and Halliburton settled with the SEC and DOJ in 2009, making certain payments to the U.S. Government.  On September 3, 2010, after the [FGN] learned of these settlements, the FGN filed charges in Nigeria against the members of the Joint Venture and other individuals and entities connected with the Bonny Island project.

Gerachis Decl. Ex. F at 11.

In response, Halliburton explained why no documents responsive to this request are discoverable, *i.e.*, because the request seeks documents (i) regarding payments not at issue, (ii) protected from disclosure by privilege, (iii) without identifying a timeframe, and/or (iv) outside of Halliburton's possession, custody, or control.  Gerachis Decl. Ex. H at 28-30.  Thus, Halliburton stated that it would not produce non-privileged documents, or log privileged documents, in response to this request.  *Id.* at 30.  Contrary to the United States' suggestion, Halliburton has identified any responsive, otherwise discoverable documents withheld on privilege grounds on its privilege log.  Gerachis Decl. ¶ 18.  Insofar as the United States wants Halliburton to identify on its privilege log documents that Halliburton believes are not discoverable, *see* Motion at 23-24, this demand is directly contrary to the Federal Rules of Civil Procedure—the above-quoted comment to which clarifies that "[t]he obligation to provide pertinent information concerning withheld privileged materials applies only to items '*otherwise discoverable*'"—and common sense.

*Third*, the United States claims that Halliburton "effectively waive[d] its objections" by "stating that it is producing subject to its objections and without waiving them."  Motion

at 24 (heading).  This is untrue.  Halliburton never stated that it was producing documents "subject to" its objections.  Where Halliburton objected in part to a document request on the basis that some—but not all—requested documents are not discoverable, it agreed to produce the non-privileged documents (and log the privileged documents) that it believes are discoverable.  *See, e.g.*, Gerachis Decl. Ex. H at 7.

Halliburton unequivocally stated whether it would produce documents in response to a given request and, if so, which documents.  *Id.*  Halliburton thereby complied with its obligations under Rule 34.  *See Heller*, 303 F.R.D. at 489-90 ("[I]f all or part of a discovery request seeks documents or information not even reasonably calculated to lead to the discovery of admissible evidence, the responding party should make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable under the Rule 26(b) standard and stand on that objection as to the portion of the request that is so objectionable while specifically describing the portion, if any, of the request to which the responding party is answering or producing documents.")

This is in no way comparable to the case on which the United States primarily relies, in which the objecting party agreed to produce documents "subject to" its objections but "failed to specify the scope of their answer in relation to the request" thereby making it "impossible . . . to assess the sufficiency of the response."  *RealPage*, 2017 WL 1165688, at *2-3.  Insofar as the United States' position is that a party who objects in part and responds in part to a request thereby waives all objections, the United States demonstrates a misconception of the discovery process that would punish parties for complying with their obligations.  The Court should correct the United States' confused view of discovery.

14

**B. Halliburton Properly Objected to Each of the Requests with Specificity.**

In responding to a request for production of documents, each response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "Boilerplate" objections are inappropriate. *Heller*, 303 F.R.D. at 483.

Halliburton did not make "boilerplate" objections to the United States' discovery requests.  Rather, in response to each and every request, Halliburton (1) explained the extent to which such request sought non-discoverable information, and (2) stated, where applicable, the discoverable information that Halliburton would produce or log.

For example, Request No. 1 of the Second Requests asks for all documents from 2009 to 2010 between Halliburton and KBR (or their agents) "relating to the interpretation or application of the MSA." Gerachis Decl. Ex. F at 7.  Halliburton objected that this request was overly broad, unduly burdensome, not proportional to the needs of the case, and requested irrelevant information, because the MSA is "a comprehensive agreement containing dozens of provisions that have no bearing on the issues in dispute in this case" and because the request "potentially includes matters wholly unrelated to this case." Gerachis Decl. Ex. H at 6-7.  In other words, the request called for the production of a massive number of non-discoverable documents.  Halliburton explained that it would produce non-privileged documents within the Relevant Timeframe containing communications within such timeframe between Halliburton and KBR (or their respective attorneys) "relating to the interpretation or application of the indemnification provisions of the MSA with respect to demands for payment by the FGN related to the Relevant Subject

Matters." *Id.* That is, Halliburton focused the United States' sweeping request on information that is at least arguably discoverable.

Halliburton's particularized objections stand in stark contrast to the cases on which the United States relies, in which objecting parties made generalized objections untethered to the specifics of any given request and/or failed to provide any explanation for conclusory objections. *See, e.g.*, *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 186-87 (N.D. Iowa 2017) (where objecting party failed to articulate how each request was irrelevant or overly broad and merely responded "subject to" unidentified general objections); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 685, 697 (S.D. Fla. 2011) (where objecting party simply objected "on the grounds of relevance, materiality, confidentiality, and privacy," without explanation); *Simon v. State Farm Lloyds*, No. 7:14-CV-251, 2015 WL 12777219, at *3-4 (S.D. Tex. Apr. 9, 2015) (where objecting party made general objections based on overbreadth and relevance without "any facts explaining why an individual interrogatory [was] overly broad or burdensome, why the materials sought [were] irrelevant, or how production would exceed the scope of discovery").

The United States claims the problem with non-specific objections is that "it is impossible to know whether information has been withheld and, if so, why." Motion at 14 (quoting *Heller*, 303 F.R.D. at 483). But the United States cannot plausibly claim that it does not know which documents Halliburton has and has not agreed to produce.

While the United States claims that Halliburton "uses its boilerplate objections to avoid producing clearly relevant information," Motion at 17, Halliburton's objections are not boilerplate and the requested information is not relevant. The requests that the United

States cites—Requests Nos. 12 and 14 of the Second Requests—seek documents related to proceedings in the United States that were settled in 2009. Gerachis Decl. Ex. F at 11. As previously explained, and as Halliburton articulated in its objections, proceedings outside of Nigeria have no bearing on the deductibility of the Settlement Payment.

Nor are the documents requested in Requests Nos. 12 and 14 of the Second Requests relevant simply because Halliburton summarized certain background facts in its administrative claim for refund with the Internal Revenue Service. Motion at 20-22. As the United States repeatedly has asserted, this refund suit is a *de novo* proceeding in which the Court will determine for itself whether Halliburton is entitled to a deduction for the Settlement Payment. *See, e.g.*, *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991). Therefore, the requested documents must be relevant to the deductibility of the Settlement Payment to be discoverable. At the risk of repetition, documents regarding other proceedings and other payments in other years to other entities simply have no bearing on the deductibility of the Settlement Payment and therefore are not discoverable.[4]

The United States also takes issue with the fact that Halliburton, in its objections to Requests Nos. 12 and 14 of the Second Requests, noted that information regarding the non-Nigerian proceedings referenced therein is publicly available. Motion at 19-20. This fact

---

[4] The United States' invocation of the substantial variance doctrine is inapt. The substantial variance doctrine generally provides that a taxpayer cannot base a suit for refund on grounds or facts which substantially vary from those set forth in its administrative claim for refund. *See generally* Opp'n to United States' Am. Mot. Dismiss Counts Two and Three Pl's Compl. [ECF 31] at 8-15. The fact that certain background facts were included in Halliburton's administrative refund claim has nothing to do with whether Halliburton introduced new grounds in its refund suit. In any event, the Court has denied that motion.

is further evidence as to why forcing Halliburton to collect, review, and produce documents related to irrelevant proceedings is not proportional to the needs of this case. *See, e.g.,* *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 JFK, 2011 WL 4949928, at *3 (S.D.N.Y. Oct. 18, 2011) (limiting a request for production "of all documents relating to" a given litigation matter because such request "would impose an unnecessary cost at this stage of the litigation, especially in light of the publicly available information allegations" in that matter) (citing FED. R. CIV. P. 26(b)(2)).

Simply put, Halliburton has complied with its obligation to "state with specificity the grounds for objecting to the request[s], including the reasons." FED. R. CIV. P. 34(b)(2)(B). The United States' assertions to the contrary are baseless.

### III. Halliburton Produced Documents as They Were Kept in the Usual Course of Business.

As to the United States' complaint that Halliburton did not match each document produced to the request(s) to which it is responsive, Motion at 25-28, Halliburton has no obligation to do so. In response to a request for production, a party "must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i) (emphasis added). "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii). Halliburton produced responsive, discoverable documents in a searchable and sortable form, with

metadata and load files, following standard production protocols.  Gerachis Decl. ¶ 17; Declaration of Andree Bourgeois ¶ 2.

Halliburton's document productions in no way constitute a "document dump" and are a far cry from the inapposite and easily distinguishable cases on which the United States relies.  *See, e.g.*, *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 609-11 (D. Neb. 2001) (finding that, where the producing party *did not* produce documents as they were kept in the ordinary course of business, the producing party did not satisfy its obligations under Rule 34 by forcing the requesting party to sift through four oversized file cabinets of unindexed documents); *Stiller v. Arnold*, 167 F.R.D. 68, 70-71 (N.D. Ind. 1996) (explaining that "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request," and focusing on the latter option, finding that producing 7,000 pages of documents in no apparent order did not satisfy the producing party's obligation to "organize and label" the documents); *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 43-44 (S.D.N.Y. 1984) (in the context of Rule 33—rather than Rule 34—explaining that a producing party fails to satisfy its obligation under Rule 33(c) to, in lieu of answering an interrogatory, "specify the records from which the answer may be derived or ascertained" by "merely direct[ing] the interrogating party to a mass of business records").

Halliburton also notes that the United States' discovery requests overlap substantially. To cite just a few examples:

- Request No. 7 of the First Requests seeks "[a]ll drafts of the Settlement Agreement that is described in paragraph 22 of the Complaint;"

- Request No. 8 of the First Requests seeks "[a]ll documents evidencing negotiations between [Halliburton] and the FGN relating to the Settlement Agreement;"

- Request No. 8 of the Second Requests seeks "all documents and Written Communications reflecting the drafting and negotiation of the Settlement Agreement between Halliburton and the FGN during the Narrowed Timeframe;"

- Request No. 16 of the Second Requests seeks "all documents and Written Communications between Plaintiff and FGN relating to Section 5 of the Settlement Agreement, titled 'Ex-Gratia Payment,' including the negotiation of such Section;" and

- Request No. 17 of the Second Requests seeks "all documents and Written Communications between Plaintiff and FGN relating to Section 7 of the Settlement Agreement, titled 'No Admission,' including the negotiation of such Section." Gerachis Decl. Ex. A at 8, Ex. F at 9, 11-12.

A given document related to the Settlement Agreement is likely responsive to several, if not all, of these requests, among a litany of others.

Halliburton has complied with its obligations by producing documents as they were kept in the usual course of business. The United States is entitled to nothing further.

## IV. The United States' Ten-Month Extension Request Is Unwarranted.

As recently as July 2, 2025, the United States proposed a six-month extension of the schedule on the basis of outstanding and anticipated discovery disputes. Gerachis Decl. Ex. M. Since that time, the Court made clear that it would not require Halliburton to produce the volumes of non-discoverable documents that the United States had requested. Counterintuitively, the Court's rejection of the United States' argument somehow appears to have led the United States to request a ten-month extension of the schedule. Halliburton struggles to see why such a lengthy extension is warranted, especially in light of the United States' admitted lack of diligence in retaining an expert.

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535 (citation omitted). Whether good cause exists depends on (1) the explanation for the requested modification, (2) the importance of the requested modification, (3) potential prejudice in granting the requested modification, and (4) the availability of a continuance to cure any such prejudice. *Martinez v. Univ. Tex. Aus.*, No. 1:20-CV-1175 (DAE), 2022 WL 22887025, at *2 (W.D. Tex. Sept. 30, 2022). A court "is not required to give litigants who have not been diligent 'a second chance to develop their case.'" *Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-L, 2019 WL 317118, at *3 (N.D. Tex. Jan. 23, 2019) (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997)).

Halliburton is anxious to bring this matter to trial but agrees that a limited four-month extension of the schedule is appropriate.  Given the outstanding disputes between the parties—including with respect to the documents regarding the regulatory history of 26 C.F.R. § 1.162-21(b)(1)(iii) (the "***Potential Penalty Regulation***") that the United States has continued to withhold—a four-month extension should provide sufficient time for the parties to prepare for trial.  But the United States fails to justify a ten-month extension.

With respect to the outstanding discovery disputes between the parties, the United States cannot rely on its Motion as a defense for a ten-month extension.  The Court was absolutely clear that the United States is not entitled to any additional documents.[5] Relitigating an already-decided dispute with no new support is no basis for an extension of the schedule.  *See Clapper*, 2019 WL 317118, at *6 (denying request to extend deadline for filing motions for summary judgment where movants were merely "seeking to attempt to relitigate what the court has already decided and [had] not shown good cause for doing so").  Indeed, the only discoverable documents subject to a motion to compel that have not yet been produced are the documents *requested by Halliburton* related to the Potential Penalty Regulation.  With respect to potential additional discovery requests, there is no reason why the United States needs a ten-month extension to serve discovery requests that it purportedly is in the process of preparing.

---

[5] To the extent that the Motion suggests that Halliburton somehow agreed to produce additional documents during the August 7 Hearing, the United States is mistaken.  At the hearing, the Court rejected the United States' argument that documents related to other proceedings and other payments are relevant and made clear that the United States is not entitled to any documents beyond what Halliburton already has produced.

With respect to experts, the United States concedes in its Motion that it has failed to look for an expert to speak on matters of Nigerian law and asks for more time to do so. Motion at 29. This case has been pending since June 2024, and it has been apparent since inception that matters of Nigerian law would be at issue. The United States' failure to retain an expert is no excuse for a ten-month extension. *See Clapper*, 2019 WL 317118, at *3-5 (denying request to extend deadline for designating expert where the issues on which such expert would opine were evident from the filing of the original pleadings); *In re Accutane Prods. Liab. Litig.*, 923 F. Supp. 2d 1349, 1352 (M.D. Fla. 2013) (denying request to extend expert deadlines where movants had not begun to search for an expert in a case that had been pending for nearly one year and a half). The United States also asks for an additional month between the deadlines for Halliburton's expert report and the United States' expert report. Motion at 29 n.4. The United States should not be conferred an advantage for its failure to diligently retain an expert.

With respect to privilege, Halliburton first learned that the United States was considering a challenge to Halliburton's assertions of privilege at the August 7 Hearing. Gerachis Decl. ¶ 19. The United States has since indicated that it intends to challenge the substantial majority of entries on Halliburton's privilege log but has not adequately identified the basis for challenging each such entry. *Id*. This is improper. *See United States v. Louisiana*, No. 11-470-JWD-RLB, 2015 WL 2453719 (M.D. La. May 22, 2015) (rejecting United States' blanket challenges to log and requiring identification of specific entries); *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 2578264, at *1 (N.D. Cal. Sept. 6,

2006) (explaining that a party "should not challenge the withheld documents in a blanket manner, but should be sure to address the specific documents for which they believe[] the assertion of privilege is unjustified"). Moreover, to avoid needlessly involving the Court, Halliburton for months has invited the United States to discuss an appropriate non-waiver agreement to facilitate the production of certain privileged information. *See, e.g.*, Gerachis Decl. Ex. J at 10, 12-15. Instead, the United States threatens a blanket privilege challenge.

Halliburton agrees that a limited four-month extension of the schedule is appropriate in light of the outstanding disputes between the parties. But the case involves events from fifteen years ago, and further delay is problematic. Moreover, the United States should not be rewarded for its lack of diligence with a ten-month extension. Halliburton asks the Court to modify the schedule as set forth in the attached Proposed Order.

### V. The United States Repeatedly Has Failed to Follow Proper Procedure.

In addition to its failures on the merits, the Motion disregards the Local Rules of the United States District Court for the Southern District of Texas (the "***Local Rules***") and the Court's Procedures.

*First*, the Local Rules provide, "If a motion or response requires consideration of facts not appearing of record, proof by affidavit or other documentary evidence must be filed with the motion or response." LR7.7. The United States recites pages of self-serving narrative to support its positions without a single citation to evidence. *See* Motion at 7-10.

*Second*, the Court's Procedures advise that "[m]ost discovery and scheduling disputes can and should be resolved by counsel without the intervention of the Court. Compromise is encouraged." Procedure 6.E. The Court's Procedures also instruct that

24

"[c]ounsel are responsible for conferring in good faith to resolve discovery and scheduling disputes." Procedure 6.E.1. As described above, the United States has been uncooperative in Halliburton's efforts to resolve the parties' disputes short of Court involvement, refusing to propose meaningful stipulations, failing to adequately articulate entry-by-entry privilege challenges, and moving the goalposts on an extension to ten months. *See supra* at 9 n.3, 23-24; Gerachis Decl. ¶¶ 20-22. Through its unwillingness to compromise, the United States wastes the Court's and the parties' time with needless disputes.

*Third*, if the parties are unable to reach agreement, the Court's Procedures require that the parties file a joint letter requesting a conference with the Court that "outlin[es] the issues" in dispute. Procedure 6.E.1. However, several issues raised in the Motion (*e.g.*, the United States' assertions that Halliburton made "boilerplate" objections and failed to identify non-discoverable documents on its privilege log) were not previewed in the joint letter to the Court, or in the correspondence attached thereto, and consequently were not discussed at the August 7 Hearing. The United States' kitchen-sink Motion deprives the Court of the ability to reduce unnecessary motion practice by "dispos[ing] of discovery disputes at the conference to the extent possible." Procedure 6.E.2.

## CONCLUSION

In moving to compel, the United States retreads arguments that the Court has rejected and raises new, nonsensical arguments unsupported by fact or law. In moving for a ten-month extension, the United States asks the Court to reward its lack of diligence and cooperation. Halliburton respectfully asks the Court to deny the Motion in its entirety and to modify the Docket Control Order as set forth in the attached Proposed Order.

25

DATED: September 23, 2025

Respectfully submitted,

*/s/ George M. Gerachis*
George M. Gerachis
Attorney-in-Charge
Texas State Bar No.: 07812500
S.D. TX Federal I.D. No.: 345390
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email: ggerachis@velaw.com
Telephone: 713-758-1056
Facsimile:  713-615-5612

OF COUNSEL:

Kathleen Pakenham *(Pro Hac Vice)*
VINSON & ELKINS L.L.P.
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Email:  kpakenham@velaw.com
Telephone: 212-237-0149
Facsimile:  917-591-1995

Christopher Popov
Texas State Bar No.: 24032960
S.D. TX Federal I.D. No.: 34615
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Email:  cpopov@velaw.com
Telephone: 713-758-2636
Facsimile:  713-615-5033

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2025, I electronically filed this Response to United States' Motion to Compel Discovery Responses and Request for Modification and Extension of Scheduling Order using the ECF system, which constitutes service on all counsel of record.

*/s/ George M. Gerachis*
George M. Gerachis